## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| MARCIE KNOX, CHERYL SKAJ, JANET EICH, and BRADLEY BANDAS, individually and on behalf of all others similarly situated, | Case No. 24-cv-4235 (LMP/LIB) |
| Plaintiffs, | **ORDER GRANTING REYNOLDS AND ROLFE'S MOTION TO DISMISS AND GRANTING IN PART AND DENYING IN PART IMPACT DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| IMPACT MHC MANAGEMENT, LLC; SARTELL MHP, LLC; SARTELL MHP 2, LLC; GEMSTONE COMMUNITIES, LLC; SARTELL MHC, LLC; DAVID REYNOLDS; and FRANK ROLFE, | |
| Defendants. | |

Anne M. Lockner, Geoffrey H. Kozen, and Rashanda C. Bruce, **Robins Kaplan LLP, Minneapolis, MN**, and Justin H. Perl, Mary Kaczorek, Chace Huntzinger, and Mateen Zubair Shah, **Mid-Minnesota Legal Aid, Minneapolis, MN**, for Plaintiffs.

Aron J. Frakes and Nathan Converse, **Fredrikson & Byron, P.A., Minneapolis, MN**, for Defendants.

Plaintiffs Marcie Knox ("Knox"), Cheryl Skaj ("Skaj"), Janet Eich ("Eich"), and

Bradley Bandas ("Bandas") (collectively, "Plaintiffs") are tenants of the Sartell Mobile

Home Park ("SMH Park"). SMH Park has been owned and operated at various points since

2014 by Defendants Impact MHC Management, LLC ("Impact MHC"), Sartell MHP, LLC

("Sartell MHP"), and Sartell MHP 2, LLC ("Sartell MHP 2") (collectively, the "Impact

Defendants"), and Defendants Gemstone Communities, LLC and Sartell MHC, LLC

(together with the Impact Defendants, the "Park Defendants"). Plaintiffs allege that

1

Defendants David Reynolds ("Reynolds") and Frank Rolfe ("Rolfe") are involved in the ownership or management of SMH Park through the Impact Defendants.

Plaintiffs bring a variety of state-law claims against Park Defendants, Reynolds, and Rolfe, alleging that they failed to properly maintain sewer systems at SMH Park, that they illegally and excessively billed for residents' utility use, and that they fraudulently induced Plaintiffs to sign leases that contained illegal and oppressive terms. *See* ECF No. 1-2 ¶¶ 53–119. Impact Defendants and Reynolds and Rolfe have moved to dismiss some or all of Plaintiffs' complaint. *See* ECF Nos. 7, 14. For the following reasons, the Court grants Reynolds and Rolfe's motion and grants in part and denies in part Impact Defendants' motion.

## FACTUAL BACKGROUND

Plaintiffs are residents of SMH Park in Sartell, Minnesota. ECF No. 1-2 ¶¶ 8–11. Park Defendants owned, operated, or managed SMH Park at various times since 2014. *Id.* ¶¶ 12–17, 28–34. The relationship between these entities is complex and not altogether clear at this early stage in the proceedings, but in short, Plaintiffs allege that SMH Park was purchased in 2014 through Sartell MHP. *Id.* ¶ 28. Sartell MHP owned SMH Park until 2018, at which time Sartell MHP was sold to Impact Communities. *Id.* ¶ 31. Sartell MHP continued to own and operate SMH Park until November 2023, when Impact Communities created Sartell MHP 2 and transferred ownership of SMH Park from Sartell MHP to Sartell MHP 2. *Id.* ¶ 32. Then, in June 2024, Gemstone Communities purchased SMH Park through a special-purpose subsidiary, Sartell MHC, LLC, which currently operates SMH Park. *Id.* ¶ 17.

2

This web of entities is relevant because Plaintiffs allege that Reynolds and Rolfe are involved with Impact Defendants, either through their ownership or operation of these entities. *Id.* ¶¶ 3, 19–20, 51. According to Plaintiffs, Reynolds and Rolfe are one of the largest owners of mobile home parks in the country and employ "notoriously exploitative" practices at the mobile home parks they own and operate. *Id.* ¶¶ 35–52.

Plaintiffs allege that Reynolds and Rolfe—and the entities they owned or operated—employed these exploitative practices at SMH Park. Plaintiffs' allegations generally revolve around three categories: (1) sewage issues, (2) water meter issues, and (3) lease agreement issues.

### Sewage Issues

In 2016, residents of SMH Park attempted to purchase the mobile home park from Sartell MHP. *Id.* ¶¶ 28–30. As part of the purchase process, the residents commissioned an appraisal, which found that significant repairs were required to the water and sewage infrastructure at SMH Park to bring the property into "average condition with average functional utility." *Id.* ¶ 58. The appraisal also noted residents' concerns that hazardous waste, including sewage, had been dumped in SMH Park and had contaminated the park's soil. *Id.* ¶ 60. In part because of the significant scope of repairs required by the appraisal, the residents were unable to secure financing to purchase SMH Park. *Id.* ¶ 61.

Plaintiffs allege that despite receiving a copy of the appraisal, Park Defendants failed to repair and maintain SMH Park's sewage system, leading residents to live in "uninhabitable and unsanitary conditions." *Id.* ¶¶ 70, 72, 74–77. For example, within three days of Knox moving into her home at SMH Park in 2017, sewage began "backing up

through her pipes and seeping out of her toilet and shower drains." *Id.* ¶ 63.  Plaintiffs allege that Park Defendants failed to address the underlying sewage issues, leading to similar sewage back-ups in Knox's home in 2018 and 2021.  *Id.* ¶ 64.  After the 2021 sewage back-up, Knox hired a handyman to inspect her home; the handyman reported that the area under Knox's home "was an open pool of raw sewage."  *Id.*  Roto Rooter determined that tree roots in SMH Park's sewage main were responsible for the sewage back-ups.  *Id.* However, after Knox reported these findings to Park Defendants, Knox was "blamed" for the sewage back-up, and Park Defendants "refused to pay for the repairs," which required Knox to pay for the repairs herself.  *Id.*  Eventually, in September 2022, the Minnesota Pollution Control Agency ("MPCA") issued an Administrative Penalty Order to Sartell MHP relating to Knox's sewage back-ups, finding that tree-root infiltration was to blame for the sewage back-up.  *Id.* ¶ 65; *id.* at 109–114.

Other residents of SMH Park have experienced similar sewage back-ups in their homes.  *Id.* ¶¶ 66–70.  These residents state that when they reported the sewage issues to Park Defendants, Park Defendants blamed the residents and refused to pay for repairs.  *Id.* According to Plaintiffs, problems with the sewage system have not been remedied, and residents of SMH Park continue to endure sewage back-ups.  *Id.* ¶ 72.

Plaintiffs bring five causes of action against Park Defendants related to the sewage issues.  *Id.* ¶¶ 165–97.  Specifically, Plaintiffs allege breach of contract for (1) violations of the implied covenant of habitability, *id.* ¶¶ 165–72, (2) violations of the Minnesota Environmental Rights Act ("MERA"), *id.* ¶¶ 173–80, (3) negligence, *id.* ¶¶ 181–88,

(4) nuisance, *id.* ¶¶ 189–93, and (5) violations of state-law manufactured home park standards, *id.* ¶¶ 194–97.

### Water Meter Issues

For much of SMH Park's existence, utilities were not billed separately from rent. *Id.* ¶ 78. That changed in May 2020, when Sartell MHP notified residents of SMH Park that SMH Park would be switching to metered utility billing. *Id.* ¶ 79. Park Defendants also notified residents that as of December 1, 2020, residents would be charged a monthly $2.50 "Meter Service Charge" fee, which was increased to $5.00 in August 2023. *Id.* ¶ 82. Sartell MHP also began installing Neptune ProCoder 5/8 T-10 water and sewage meters ("Neptune Meters") at each resident's home. *Id.* ¶ 81. But according to Plaintiffs, the Neptune Meters have been "wildly inaccurate and inconsistent, resulting in huge invoices to SMH Park residents that are not accurate measures of their water and sewage usage." *Id.* ¶ 86.

For example, Knox alleges that although her water usage was steady throughout 2020, she was charged for 3,000 gallons in the middle of 2020; 8,000 gallons in September; 11,580 gallons in October; and 15,240 gallons in November. *Id.* ¶ 88.[1] Although Park Defendants eventually reduced her water bill to 3,000 gallons of water monthly in 2021, the inflated billing resumed in July 2022, when she was charged for 10,210 gallons of water. *Id.* Knox has also noticed that the online ledger reflecting Knox's water usage has varied from paper bills issued by Park Defendants (for example, in January 2023, when the

---

[1]    Plaintiffs note that a typical individual uses approximately 2,400 to 3,000 gallons of water per month. *Id.* ¶ 87.

online ledger noted 2,720 gallons of water usage, but a paper bill noted 63,088 gallons of water usage).  *Id.*  When Knox confronted Park Defendants with the charge for 63,088 gallons of water usage in one month, Park Defendants told Knox that she must have a water leak.  *Id.* ¶ 89.  Yet, the Neptune Meters are specifically programmed to detect leaks.  *Id.* ¶ 95.  Nevertheless, Park Defendants have demanded that Knox pay the allegedly inflated water bills or face eviction.  *Id.* ¶ 90.

Other residents of SMH Park have faced issues with allegedly faulty water meter readings.  In February 2024, Skaj received a bill stating she used 335,510 gallons of water for that month (that is, 111 times more than the monthly average for a typical individual). *Id.* ¶ 92.  Although the Park Defendants eventually waived these charges, they did not explain how the erroneous bill was calculated.  *Id.*  And in July 2024, Bandas received a water and sewage bill with an incorrect starting use value.  *Id.* ¶ 93.  When Bandas raised the issue with SMH Park's management, he was told that his Neptune Meter had been inoperable for five months, and that he had been paying "estimated amounts" for water and sewer use.  *Id.*  SMH Park's management stated that Bandas was required to pay for these "estimated amounts."  *Id.*  Other residents of SMH Park who raised similar issues to the Park Defendants were similarly blamed for "leaks" on their property.  *Id*. ¶ 95.

Plaintiffs allege that Park Defendants failed to hire licensed professionals to maintain and repair the Neptune Meters*, id.* ¶¶ 98–103, and that they violated state laws relating to the imposition of new rules at manufactured home parks, the calculation of utility bills, the imposition of administrative fees for utility metering, and requirements for licensed professionals to repair utility meters.  *Id.* ¶¶ 155–64.

6

*Lease Agreement Issues*

In August 2023, residents of SMH Park received hand-delivered notices from the Impact Defendants, which included the following language:

> Minnesota House of Representatives has passed a law relating to your lease, it is now required that every resident has a copy of their signed lease, the community also has a copy of your signed lease on file.
>
> If you are receiving this letter, we do not have a signed lease for you on file, we will need the signed lease on file to comply with the new legislation effective January 1, 2024.
>
> At this time, we advise you to contact the office to schedule your lease signing today.

*Id.* ¶¶ 106, 140.   Plaintiffs observe that no such law was passed by the Minnesota Legislature in 2023; in fact, existing Minnesota law already required landlords to provide tenants with a copy of their lease.  *Id.* ¶ 107; *see* Minn. Stat. §§ 327C.025; 504B.115.

Plaintiffs allege that SMH Park residents were repeatedly called by SMH Park management, who demanded that they sign leases pursuant to the nonexistent new law by December 15, 2023, or face eviction.   ECF No. 1-2 ¶ 111.   Plaintiffs allege, upon "information and belief," that Reynolds and Rolfe "caused the Impact Defendants, as well as their legal counsel, to send the Deceptive Lease Notice to residents, and to call, pressure, and threaten residents to sign these invalid and unnecessary leases."  *Id.* ¶ 108.

According to Plaintiffs, SMH Park residents were never informed by Impact Defendants that the leases they were signing were new or different from their original leases.  *Id.* ¶ 112.  However, the leases that SMH Park residents were pressured to sign did, in fact, contain provisions that were new and different from the residents' original leases.

*Id.* ¶ 112.  These new provisions were "illegal and oppressive," according to Plaintiffs, and included new fees for credit or debit transactions to pay rent, a requirement to pay rent online and before the first of the month, an increased security deposit, a new pet fee, an increased late fee, and a new returned check fee.  *Id.* ¶¶ 114–15.  Skaj and Bandas signed these new leases, while Knox and Eich did not.  *Id.* ¶ 118.

Plaintiffs bring three causes of action against the Impact Defendants, Reynolds, and Rolfe relating to the lease agreement issues: (1) fraud, *id.* ¶¶ 138–48, (2) violations of the Minnesota Deceptive Trade Practices Act ("MDTPA"), and (3) violations of the Minnesota Consumer Fraud Act ("MCFA"), *id.* ¶¶ 149–54.  Plaintiffs also allege a cause of action against the Park Defendants relating to the lease agreement issues—specifically, a violation of state law relating to the imposition of new rules at manufactured home parks.  *Id.* ¶¶ 198–202.

### Current Proceedings

Plaintiffs originally brought this action in Minnesota state court as a putative class action.  Defendants removed the action to federal court on November 20, 2024, asserting jurisdiction under the Class Action Fairness Act ("CAFA").[2]  *See* ECF No. 1.  Impact Defendants and Reynolds and Rolfe now move to dismiss portions of Plaintiffs'

---

[2]    Under CAFA, federal courts have original jurisdiction over class actions "where, among other things, 1) there is minimal diversity; 2) the proposed class contains at least 100 members; and 3) the amount in controversy is at least $5 million in the aggregate." *Raskas v. Johnson & Johnson*, 719 F.3d 884, 886 (8th Cir. 2013) (citation omitted).  The party seeking removal under CAFA bears the burden of establishing these jurisdictional requirements by a preponderance of the evidence.  *See id.* at 887.  Defendants have proven these jurisdictional requirements by a preponderance of the evidence, *see* ECF No. 1, and indeed, no party disputes that original jurisdiction in this Court is appropriate under CAFA.

complaint.[3]  *See* ECF Nos. 7, 14.  Reynolds and Rolfe argue that the Court lacks personal jurisdiction over them, ECF No. 9 at 3–18, and all moving defendants assert that Plaintiffs' complaint fails to state claims on which relief can be granted, *id.* at 19–24; ECF No. 16 at 7–31.

## ANALYSIS

In reviewing a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), the Court determines whether the nonmoving party (here, Plaintiffs) have made a "prima facie showing of jurisdiction." *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 647 (8th Cir. 2003).  The party seeking to establish personal jurisdiction bears the burden of proof, and "the burden does not shift to the party challenging jurisdiction." *Id.*  When evaluating personal jurisdiction, the Court must view the evidence in the light most favorable to Plaintiffs.  *See Westley v. Mann*, 896 F. Supp. 2d 775, 786 (D. Minn. 2012).  For purposes of evaluating personal jurisdiction, the Court may look to matters outside of the pleadings.  *See Stevens v. Redwing*, 146 F.3d 538, 543 (8th Cir. 1998).

In reviewing a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the Court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted).  The complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (citation

---

[3]     To date, Defendants Gemstone Communities, LLC and Sartell MHC, LLC have not answered Plaintiffs' complaint.  It appears that Plaintiffs have been granting Gemstone Communities, LLC and Sartell MHC, LLC periodic extensions to respond to the complaint. *See* ECF No. 46.

omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Unlike the personal-jurisdiction inquiry, the Rule 12(b)(6) analysis does not consider matters outside of the pleadings but considers only the complaint, exhibits attached to the complaint, and materials embraced by the complaint. *See Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017).

Plaintiffs' fraud, MCFA, and MDTPA claims also require Plaintiffs to meet the heightened pleading standard of Fed. R. Civ. P. 9(b). *See Bhatia v. 3M Co.*, 323 F. Supp. 3d 1082, 1092 (D. Minn. 2018). To satisfy Rule 9(b)'s requirement that the circumstances constituting alleged fraud be stated with particularity, "the complaint must plead the 'who, what, where, when, and how' of the alleged fraud." *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009) (citation omitted).

## I.    Reynolds and Rolfe's Motion

### a.    Personal Jurisdiction

The Court first considers whether it has personal jurisdiction over Reynolds and Rolfe. They argue that the Court does not. ECF No. 9 at 3–18. Federal courts in Minnesota may assume jurisdiction over nonresident defendants to the extent permitted by the Due Process Clause of the Fourteenth Amendment. *See Federated Mut. Ins. Co. v. FedNat Holding Co.*, 928 F.3d 718, 720 (8th Cir. 2019). The "touchstone" of due process is "whether the defendant has sufficient minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial

justice." *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 594 (8th Cir. 2011) (internal quotation marks omitted) (alteration in original) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Personal jurisdiction comes in two flavors—general or specific. *Id.* at 593. "Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state, while general jurisdiction refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose." *Id.* (citation omitted) (cleaned up). The parties appear to agree that general personal jurisdiction is not appropriate over Reynolds and Rolfe, so the Court focuses on specific personal jurisdiction.

As Reynolds and Rolfe correctly point out, all of Plaintiffs' relevant allegations against Reynolds and Rolfe individually relate to their involvement with the Impact Defendants. *See* ECF No. 1-2 ¶¶ 3, 19–20, 28, 31–32, 50–52, 95, 108. Under the fiduciary shield doctrine, "a corporate officer or agent who has contact with the forum state only with regard to the performance of corporate duties does not thereby become subject to jurisdiction in his or her individual capacity." *Ark. Rice Growers Coop. Ass'n v. Alchemy Indus., Inc.*, 797 F.2d 565, 574 (8th Cir. 1986). However, courts have recognized an exception to the fiduciary shield doctrine "where the officer or director is alleged to have committed fraud or another intentional tort on behalf of the corporation." *In re RFC & ResCap Liquidating Tr. Litig.*, No. 13-cv-3451 (SRN/HB), 2017 WL 1483374, at *10 (D. Minn. Apr. 25, 2017) (collecting cases); *see Larson Mfg. Co. of S.D. v. Conn. Greenstar, Inc.*, 929 F. Supp. 2d 924, 930 (D.S.D. 2013) (collecting cases). The rationale for that

11

exception is plain: "a corporate officer who engages in intentional wrongdoing on behalf of the company is not acting as a true fiduciary, and thus is not entitled to the protections of a 'fiduciary shield.'" *RFC & ResCap*, 2017 WL 1483374, at *10. The fiduciary shield doctrine also does not apply when the corporation is a mere alter ego. *See M.G. Incentives, Inc. v. Marchand*, No. C6-00-962, 2001 WL 96223, at *2 (Minn. Ct. App. Feb. 6, 2001) (citation omitted) (internal quotation marks omitted) (collecting cases).

Here, Plaintiffs allege that Reynolds and Rolfe committed fraud on behalf of Impact Defendants and that Impact Defendants are mere alter egos for Reynolds and Rolfe. *See* ECF No. 1-2 ¶¶ 50–52, 108, 138–54. If Plaintiffs have plausibly alleged such allegations against Reynolds and Rolfe, the fiduciary shield doctrine would not apply, and Reynolds and Rolfe would be subject to the personal jurisdiction of this Court. *See RFC & ResCap*, 2017 WL 1483374, at *10. This is particularly true because Impact Defendants do not challenge the Court's personal jurisdiction, so to the extent Reynolds and Rolfe were acting through those entities, Reynolds and Rolfe would have sufficient "minimum contacts with the forum state." *Viasystems,* 646 F.3d at 593–94 (cleaned up) (citation omitted). The Court must therefore determine whether Plaintiffs have sufficiently pleaded that Reynolds and Rolfe committed fraud on behalf of Impact Defendants or that Impact Defendants are alter egos for Reynolds and Rolfe.

Plaintiffs bring fraud, MDTPA, and MCFA claims related to the lease agreement issues against Reynolds and Rolfe, which require Plaintiffs to plead the "who, what, where, when, and how" of the alleged fraud under Fed. R. Civ. P. 9(b). *See Drobnak*, 561 F.3d at 783. One of the main purposes of this rule "is to facilitate a defendant's ability to respond

and to prepare a defense to charges of fraud." *Com. Prop. Invs., Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir. 1995).

Here, the sole allegation that relates to Reynolds's and Rolfe's involvement in the alleged fraudulent scheme is as follows: "Upon information and belief, Defendants Reynolds and Rolfe caused the Impact Defendants, as well as their legal counsel, to send the Deceptive Lease Notice to residents, and to call, pressure, and threaten residents to sign these invalid and unnecessary leases." ECF No. 1-2 ¶ 108.

"Allegations pleaded on information and belief usually do not meet Rule 9(b)'s particularity requirement." *Drobnak*, 561 F.3d at 783. Nonetheless, "[w]hen the facts constituting the fraud are peculiarly within the opposing party's knowledge," the plaintiff may plead allegations on information and belief, provided that the allegations are "accompanied by a statement of facts on which the belief is founded." *Id.* at 783–84.

Although the Court accepts that the facts surrounding Reynolds's and Rolfe's involvement in the alleged fraud are "peculiarly within the opposing party's knowledge," *id.*, Plaintiffs' allegation against Reynolds and Rolfe still falls short of Rule 9(b)'s heightened pleading standard. Plaintiffs provide no statement of facts on which their allegation is premised; indeed, although Plaintiffs identify specific SMH Park employees and attorneys that participated in the alleged fraud, *see, e.g.*, ECF No. 1-2 ¶¶ 111, 116, there is no indication from these allegations—either explicitly or implicitly—that Reynolds and Rolfe were personally involved in the alleged fraud. The Court cannot discern "the source of the information for the paragraph[] based on information and belief," which dooms

13

Plaintiffs' claims against Reynolds and Rolfe. *Kranz v. Koenig*, 240 F.R.D. 453, 456 (D. Minn. 2007).

Even if the allegation was not pleaded on information and belief, it still fails to meet Rule 9(b)'s heightened pleading standard because at a minimum, it lacks the "who," "when," and "how" of Reynolds's and Rolfe's conduct. *Drobnak*, 561 F.3d at 783. First, Plaintiffs lump together Reynolds's and Rolfe's alleged conduct, which is problematic because "[w]here multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of [their] alleged participation in the fraud." *Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1013 (8th Cir. 2015) (citation omitted). Plaintiffs also fail to allege *how* Reynolds and Rolfe "caused the Impact Defendants" to send the deceptive lease notice and pressure SMH Park residents to sign new lease agreements (that is, by phone calls, text messages, emails, formal policy, etc.). *See Ransom v. VFS, Inc.*, 918 F. Supp. 2d 888, 899–900 (D. Minn. 2013) (concluding that a fraud claim was not pleaded with particularity when it did not specify "in what writings or oral communications" or "in what manner" the fraud was perpetrated). Finally, Plaintiffs do not explain when Reynolds and Rolfe allegedly caused the fraudulent conduct to occur. This is significant, because Plaintiffs allege that the fraudulent scheme was concocted "[s]ome years after the Defendants came into possession of SMH Park," which occurred, at latest, in 2014. ECF No. 1-2 ¶¶ 28, 105. Alleging that Reynolds's and Rolfe's fraudulent conduct occurred at some point over the last 10 years does not meet Rule 9(b)'s particularity requirement. *See Zimmerschied v. JP Morgan Chase Bank, N.A.*, 49 F. Supp. 3d 583, 590, 592 (D. Minn. 2014) (holding that a plaintiff

failed to sufficiently plead the "when" of a fraud claim when the fraud was allegedly perpetrated sometime over the preceding approximately 10 years). In sum, Plaintiffs have failed to sufficiently plead Counts 1 and 2 against Reynolds and Rolfe.

That said, the Court may still maintain personal jurisdiction over Reynolds and Rolfe if Plaintiffs have sufficiently pleaded alter-ego liability against them. *See Epps*, 327 F.3d at 648–49. To state an alter ego claim, a Minnesota plaintiff must plead facts satisfying a two-prong test:

> The first prong focuses on the shareholder's relationship to the corporation. Factors that are significant to the assessment of this relationship include whether there is insufficient capitalization for purposes of corporate undertaking, a failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation at time of transaction in question, siphoning of funds by dominant shareholder, nonfunctioning of other officers and directors, absence of corporate records, and existence of the corporation as merely a facade for individual dealings. The second prong requires showing that piercing the corporate veil is necessary to avoid injustice or fundamental unfairness.

*Barton v. Moore*, 558 N.W.2d 746, 749 (Minn. 1997) (citing *Victoria Elevator Co. of Minneapolis v. Meriden Grain Co.*, 283 N.W.2d 509, 512 (Minn. 1979)). However, mere "interconnectedness" between entities does not plausibly allege alter-ego liability. *SICK, Inc. v. Motion Control Corp.*, No. 01-cv-1496 (JRT/FLN), 2003 WL 21448864, at *9 (D. Minn. June 19, 2003).

Plaintiffs allege that "[a]s set forth above, [Impact Defendants] fail to observe corporate formalities, are insufficiently capitalized, and function only as a façade for their individual dealings." ECF No. 1-2 ¶ 50. The problem for Plaintiffs is that these factual allegations are not "set forth above." There are no facts alleged about how Impact

Defendants fail to observe corporate formalities, how Impact Defendants are insufficiently capitalized, and how Impact Defendants function as a façade for Reynolds and Rolfe. Rather, Plaintiffs simply allege the *Victoria Elevator* factors relevant to alter-ego liability under Minnesota law, which the Court does not accept as true on a motion to dismiss.  *See Iqbal*, 556 U.S. at 678 (explaining that courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

The only truly factual allegation raised in support of alter-ego liability is that "Reynolds and Rolfe utilized four separate LLCs in the 10 years that they indirectly owned SMH Park—RV Horizons, Impact Communities, Sartell MHP, LLC, and Sartell MHP 2, LLC." ECF No. 1-2 ¶ 51.  Although the "interchangeability of these corporations" may be a factor relevant to alter-ego liability, *id.*, that fact, standing alone, only alleges the mere "interconnectedness" between entities allegedly owned by Reynolds and Rolfe, *SICK, Inc.*, 2003 WL 21448864, at *9.  Indeed, Plaintiffs do not contend that alter-ego liability justifies the exercise of personal jurisdiction over Reynolds and Rolfe.  The fiduciary shield doctrine accordingly bars the exercise of personal jurisdiction over Reynolds and Rolfe.

### b.  Jurisdictional Discovery

In the alternative, Plaintiffs request jurisdictional discovery into Reynolds's and Rolfe's involvement in the Impact Defendants' alleged fraudulent scheme.  "Jurisdictional discovery is warranted when facts that could give rise to jurisdiction are in dispute." *Lawhead v. L. Offs. of Joseph Martin Carasso*, 482 F. Supp. 3d 867, 874 (D. Minn. 2020) (citing *Viasystems*, 646 F.3d at 598).  A plaintiff's request for jurisdictional discovery must be "specifically targeted to flesh out connections already shown to exist," not merely an

attempt "to cast a wide net for potential contacts with the forum state." *Greenbelt Res.*
*Corp. v. Redwood Consultants, LLC*, 627 F. Supp. 2d 1018, 1028 (D. Minn. 2008).

The Court concludes that jurisdictional discovery is not warranted. As detailed
above, Plaintiffs have failed to demonstrate any "connections already shown to exist"
between Reynolds and Rolfe and the alleged scheme at issue in this lawsuit. *Id.* At most,
Plaintiffs have shown that Reynolds and Rolfe are business partners in various enterprises,
that Reynolds is CEO of Impact MHC, and that Rolfe has some unspecified role with
Impact MHC. *See* ECF No. 10 ¶ 7; ECF No. 33-3. None of these facts connect Reynolds
and Rolfe to the wrongdoing alleged in this case. And although Plaintiffs have their
suspicions that Reynolds and Rolfe must have had something to do with the alleged
scheme, suspicions alone cannot justify jurisdictional discovery. *See Dever v. Hentzen*
*Coatings, Inc.*, 380 F.3d 1070, 1074 n.1 (8th Cir. 2004) (citation omitted) ("When a plaintiff
offers only speculation or conclusory assertions about contacts with a forum state, a court
is within its discretion in denying jurisdictional discovery."). Jurisdictional discovery is
therefore denied.

### c. Dismissal With or Without Prejudice

Although Reynolds and Rolfe seek dismissal of the claims against them with
prejudice, ECF No. 36 at 17, the Court will dismiss the claims against Reynolds and Rolfe
*without* prejudice. "Courts ultimately have discretion to decide between a dismissal with
prejudice and one without prejudice." *Harris v. Medtronic Inc.*, 729 F. Supp. 3d 869, 883
(D. Minn. 2024). Dismissals at the motion-to-dismiss stage are generally without
prejudice, unless there is "evidence of persistent pleading failures," *Finnegan v. Suntrust*

*Mortg.*, 140 F. Supp. 3d 819, 832 (D. Minn. 2015) (citation omitted), or unless "a complaint is so deficient or defective that the court is convinced that its defects cannot be cured through re-pleading," *Newman v. JP Morgan Chase Bank, N.A.*, 81 F. Supp. 3d 735, 746 n.7 (D. Minn. 2015).

Plaintiffs have not had an opportunity to amend their complaint, and thus have not demonstrated persistent pleading failures. *See Finnegan*, 140 F. Supp. at 832. Nor are the claims against Reynolds and Rolfe "so deficient or defective" that those "defects cannot be cured through re-pleading." *Newman*, 81 F. Supp. 3d at 746 n.7. Indeed, because Plaintiffs' fraud and MCFA claims against Impact Defendants will proceed (as described below), it is possible that discovery obtained from Impact Defendants will implicate Reynolds and Rolfe in the alleged scheme. The Court will therefore follow the ordinary course and dismiss the claims against Reynolds and Rolfe without prejudice, in the event that Plaintiffs are later able to adequately plead Counts 1 and 2 against Reynolds and Rolfe. *See Harris*, 729 F. Supp. 3d at 883 ("In general, dismissals without prejudice are favored in this Circuit.").

Having resolved the parties' arguments with respect to the Court's jurisdiction over Reynolds and Rolfe, the Court now turns to whether Plaintiffs have plausibly alleged claims against Impact Defendants.

II.    **Sewage Issues**

    a.  **Count 4: Breach of Contract/Implied Covenant of Habitability (against Park Defendants)**

        i.  **Statute of Limitations**

Impact Defendants[4] first argue that Count 4 of Plaintiffs' complaint is barred by the two-year statute of limitations in Minn. Stat. § 541.051.  ECF No. 16 at 11–15.  That limitations period applies to any action "in contract, tort, or otherwise to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death" when the claims "aris[e] out of the defective and unsafe condition of an improvement to real property."  Minn. Stat. § 541.051, subd. 1(a).  The two-year limitations clock starts after "discovery of the [plaintiff's] injury."  *Id.*, subd. 1(c).  The Minnesota Court of Appeals has concluded that a sewer system constitutes an "improvement to real property" under the statute.  *Nolan & Nolan v. City of Eagan*, 673 N.W.2d 487, 495 (Minn. Ct. App. 2003).

Impact Defendants observe that Plaintiffs discovered the sewage issues during the 2016 appraisal, but failed to bring their sewage issue claims until eight years later.  ECF No. 16 at 14–15.  True enough.  But Impact Defendants overlook a critical portion of Minn. Stat. § 541.051: "Nothing in this section shall apply to actions for damages resulting from

---

[4]    In response to Impact Defendants' motion to dismiss, Plaintiffs concede that Count 4 should be dismissed as to Impact MHC and that Plaintiffs have not plausibly pleaded a "duty to warn" theory of liability against Impact Defendants.  ECF No. 32 at 5 n.2.  The Court accepts those concessions and will dismiss Count 4 as against Impact MHC.  References to "Impact Defendants" in this section refer only to Sartell MHP and Sartell MHP 2.

negligence in the maintenance, operation or inspection of the real property improvement against the owner or other person in possession." Minn. Stat. § 541.051, subd. 1(d).

That is the essence of Plaintiffs' claims: that Impact Defendants, as owners and operators of SMH Park, were negligent in their maintenance and operation of SMH Park's sewage system. Plaintiffs allege that Impact Defendants had common-law and regulatory duties to adequately maintain SMH Park's sewage system, but failed to do so, leading to "uninhabitable and unsanitary conditions" at SMH Park. *See* ECF No. 1-2 ¶¶ 55–56, 63, 65–70, 72–77, 168–70, 178–79, 186, 191–92, 196.

Impact Defendants assert that the exception in Minn. Stat. § 541.051, subd. 1(d) applies only to common-law claims, not statutory claims like Plaintiffs' MERA claim. ECF No. 37 at 4–5. But Impact Defendants' cited cases establish nothing more than the unremarkable proposition that a plaintiff seeking to invoke the exception for "negligence in the maintenance, operation or inspection" of an improvement must allege the defendant's negligence at common law. *See Boyum v. Main Entree, Inc.*, 535 N.W.2d 389, 392 (Minn. Ct. App. 1995) (requiring plaintiff to show the breach of a "standard of care required at common law"); *Geary v. Miller*, No. A08-1216, 2009 WL 1515505, at *2 (Minn. Ct. App. June 2, 2009) ("[T]he exception requires, at a minimum, an allegation of negligence."). Plaintiffs not only affirmatively allege a common-law negligence cause of action, ECF No. 1-2 ¶¶ 181–88 (emphasis added) (alleging that "Defendants have a duty under statutory *and common law* to maintain SMH Park in a safe and sanitary condition," and alleging how Defendants breached those duties), but "the focus" of Plaintiffs' other claims center on

20

these allegations of negligence, *Siewert v. N. States Power Co.*, 793 N.W.2d 272, 288 (Minn. 2011); *see* ECF No. 1-2 ¶¶ 168, 170, 176, 178, 192, 196.

A plaintiff who claims that the exception in subdivision 1(d) applies bears the burden of plausibly alleging the defendant's negligence. *See State Farm Fire & Cas. v. Aquila Inc.*, 718 N.W.2d 879, 885–86 (Minn. 2006). As described below, Plaintiffs have plausibly alleged a common-law negligence claim against Impact Defendants. And because the damages sought by Plaintiffs' claims "resulted from [Impact Defendants'] maintenance and operation" of the sewage system, and "not on any particular defect relating to the system itself," Plaintiffs' sewage issue claims are not barred by Minn. Stat. § 541.051.[5] *Siewert*, 793 N.W.2d at 288.

Therefore, as Plaintiffs recognize, a six-year statute of limitations applies to their breach-of-contract action.[6] *See* Minn. Stat. § 541.05, subd. 1(1). However, Impact Defendants note that the complaint alleges breaches of the covenants that predate the six-year period before the filing of the complaint. *See* ECF No. 16 at 14–15 (citing ECF No. 1-2 ¶¶ 62–63). Plaintiffs respond that the continuing-violations doctrine saves these breaches from the expired statute of limitations. ECF No. 32 at 11–12.

---

[5]    This conclusion also applies to Impact Defendants' argument that Counts 5 through 8 of the complaint are also barred by Minn. Stat. § 541.051.

[6]    A six-year statute of limitations also applies to Plaintiffs' MERA, negligence, and nuisance claims. Minn. Stat. § 541.05, subd. 1; *see Citizens for a Safe Grant v. Lone Oak Sportsmen's Club, Inc.*, 624 N.W.2d 796, 803 (Minn. Ct. App. 2001) (MERA and nuisance); *Kaiser v. Mem'l Blood Ctr. of Minneapolis, Inc.*, 486 N.W.2d 762, 765 (Minn. 1992) (common negligence).

Some causes of action do not expire under the statute of limitations if the allegedly wrongful act by the defendant was "a continuing violation." *Sigurdson v. Isanti County*, 448 N.W.2d 62, 66 (Minn. 1989). The continuing-violations doctrine is "very rarely" applied by Minnesota courts outside the context of employment-discrimination cases (notably, all of Plaintiffs' cited cases are employment-discrimination cases). *See Jones v. Evans*, A18-0139, 2018 WL 3716094, at *4 (Minn. Ct. App. Aug. 6, 2018). Indeed, the Minnesota Court of Appeals has refused to apply the continuing-violations doctrine in breach-of-contract cases. *See St. Paul Fire & Marine Ins. Co. v. A.P.I., Inc.*, 738 N.W.2d 401, 409 (Minn. Ct. App. 2007) ("We are aware of no cases extending the doctrine of continuing violations from the typical discrimination or worker's compensation case to the breach of contract case that we have here."). Plaintiffs similarly provide no authority that applies the continuing-violation doctrine to a breach-of-contract action, so the Court declines to apply the doctrine here.

Nonetheless, Plaintiffs have alleged conduct during the statute-of-limitations period that, if true, would constitute a breach of the covenants of habitability, as explained below. *See* ECF No. 1-2 ¶¶ 64–69. Although the six-year statute of limitations narrows the acts for which Impact Defendants may be found liable, it does not demand dismissal of the entire cause of action.[7]

---

[7]    The Court's holding does not foreclose Plaintiffs from offering evidence of pre-statute of limitations breaches of the covenants as appropriate (for example, under Fed. R. Evid. 404(b)). *See Fitzgerald v. Henderson*, 251 F.3d 345, 365 (2d Cir. 2001) ("A statute of limitations does not operate to bar the introduction of evidence that predates the commencement of the limitations period but that is relevant to events during that period.");

## ii.  Enforcement of Covenants Through a Breach-of-Contract Action

Impact Defendants next argue that Plaintiffs cannot enforce the covenants of habitability through a breach-of-contract action.  ECF No. 16 at 27–28.  Minnesota law imposes on all landlords covenants of habitability, which "are implied in every residential lease." *Wise v. Stonebridge Cmtys., LLC*, 927 N.W.2d 772, 775 (Minn. Ct. App. 2019); *see* Minn. Stat. § 504B.161, subd. 1.  The covenants provide, in relevant part, that the landlord promises that the premises will be fit for the tenant's intended use, to keep the premises in reasonable repair during the term of the lease, and to maintain the premises in compliance with applicable health and safety laws.  Minn. Stat. § 504B.161, subd. 1(a)(1)–(2), (4).  Neither the tenant nor the landlord may waive these covenants.  *Id.*, subd. 1(b).

In *Fritz v. Warthen*, the Minnesota Supreme Court identified three methods by which tenants can enforce the covenants of habitability: (1) the tenant "may assert breach of the covenants as a defense to the landlord's unlawful detainer action for nonpayment of rent," (2) the tenant "may continue to pay rent and bring his own action to recover damages for breach of the covenants by the landlord," and (3) the tenant "may raise breach of the covenants as a defense to an action by the landlord" for rent if the tenant vacates the premises and suspends rent payments.  213 N.W.2d 339, 341 (Minn. 1973); *see Ellis v. Doe*, 924 N.W.2d 258, 261–62 (Minn. 2019) (reiterating *Fritz*'s holding).  Fifteen years after *Fritz* was decided, the Minnesota Legislature enacted a statute authorizing a rent-escrow action.  *See* 1989 Minn. Laws 2350, 2367–70 (codified as amended at Minn. Stat.

---

*Synnova Inscore v. Doty*, No. 4:08CV00337 JLH, 2009 WL 2753049, at *3 (W.D. Ark. Aug. 27, 2009).

§ 504B.385).   A rent-escrow action allows a tenant to deposit rent with the court administrator while the landlord remedies the violation of the covenant.  *See* Minn. Stat. § 504B.385, subd. 1.

Impact Defendants acknowledge that *Fritz* allows the tenant to "continue to pay rent and bring his own action to recover damages for breach of the covenants by the landlord," but assert that the action referred to by *Fritz* is a rent-escrow action, not a breach-of-contract action like the one Plaintiffs bring.  ECF No. 16 at 31.  The Court disagrees.

First off, *Fritz*'s holding that a tenant can "bring his own action to recover damages for breach of the covenants" predated the enactment of the rent-escrow statute by 15 years. 213 N.W.2d at 341; *see* 1989 Minn. Laws 2350, 2367–70.  *Fritz*—decided in 1973— necessarily could not have been referring to a rent-escrow action that would not exist for another 15 years.  *Fritz*, then, must have been referring to the power of a tenant to bring a common-law "action" (like breach of contract) to "recover damages for breach of the covenants by the landlord."  213 N.W.2d at 341.

To the extent that Impact Defendants argue that enactment of the rent-escrow statute abrogated the common-law breach-of-contract remedy under *Fritz*, the Court is unpersuaded.  Minnesota courts presume that "the Legislature does not intend to abrogate the common law unless it does so by express wording or necessary implication."  *Siewert*, 793 N.W.2d at 281 (citation omitted) (internal quotation marks omitted).  As the Minnesota Supreme Court recognized in *Ellis*, the rent-escrow statute itself evinces an intent *not* to displace *Fritz*'s common-law remedies, as the statute provides that "[t]he residential tenant rights under this section . . . *are in addition to and do not limit* other rights or remedies

24

which may be available to the residential tenant and landlord . . . ." 924 N.W.2d at 263 (quoting Minn. Stat. § 504B.385, subd. 11). Accordingly, the rent-escrow statute must be viewed as a remedy "in addition to" a breach-of-contract action to enforce the covenants of habitability.

Permitting Plaintiffs to enforce the covenants of habitability in a breach-of-contract action also makes good sense as a matter of basic contract law. The covenants are "made a part of every residential lease" by operation of Minn. Stat. § 504B.161. *Fritz*, 213 N.W.2d at 342. And it is a "well-established principle that leases are contracts." *RAM Mut. Ins. Co. v. Rohde*, 820 N.W.2d 1, 14 (Minn. 2012). Putting two and two together, if a lease is a contract, and the covenants are provisions of that contract, then it follows that failure to satisfy those covenants is a "failure . . . to perform any promise that forms the whole or part of the contract." *Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014) (providing the definition of breach).

Plaintiffs are current tenants of SMH Park who continue to pay rent, ECF No. 1-2 ¶¶ 8–11, so *Fritz* entitles them to bring a breach-of-contract action "to recover damages for breach of the covenants by" Impact Defendants, 213 N.W.2d at 341.[8]

---

[8]     The Court observes that *Fritz*'s holding may present problems for Plaintiffs' class-wide claims. *Fritz* seems to allow only a current tenant who "continue[s] to pay rent" to bring an action to recover damages for breaches of the covenants. 213 N.W.2d at 341. Although the named Plaintiffs are all current tenants of SMH Park, ECF No. 1-2 ¶¶ 8–11, it appears that Plaintiffs also seek to represent a class that would include *former* tenants of SMH Park, *id.* ¶ 126. Because Plaintiffs allege that they are current tenants of SMH Park, the Court need not decide now whether former tenants of SMH Park may bring a breach-of-contract action for damages resulting from breaches of the covenants of habitability.

25

### iii.  Sufficiency of the Allegations of Impact Defendants' Breach of the Covenants

Although Impact Defendants next argue that Plaintiffs fail to sufficiently allege breaches of the covenants of habitability, ECF No. 16 at 29–30, the Court concludes that Plaintiffs have amply pleaded breaches of the covenants.  Plaintiffs allege that for years, Impact Defendants allowed tree roots to penetrate the sewer main of SMH Park, which led to repeated sewage back-ups in Plaintiffs' homes and the common areas of SMH Park. ECF No. 1-2 ¶¶ 58, 62–71.  Plaintiffs further allege that Impact Defendants failed to make effective repairs to the sewage system (leading to intervention by the MPCA) and that sewage back-ups continue to the present day.  ECF No. 1-2 ¶¶ 65, 72, 74.  Although Impact Defendants protest that they cannot be held liable when "the landlord cures or attempts to cure a defect within a reasonable time using an effective method of repair," ECF No. 16 at 30 (quoting *Rush v. Westwood Vill. P'ship*, 887 N.W.2d 701, 709 (Minn. Ct. App. 2016)), the essence of Plaintiffs' complaint is that Impact Defendants did *not* cure defects in the sewage system within a reasonable time using an effective method of repair.  *See* ECF No. 1-2 ¶¶ 64–70, 72.  Plaintiffs thus plausibly state claims for breaches of the covenant of habitability against Impact Defendants.

### b.  Count 5: MERA Claim

### i.  Sufficiency of Allegations

MERA grants a private right of action to persons like Plaintiffs to protect "air, water, land, or other natural resources located within the state, whether publicly or privately owned, from pollution, impairment, or destruction."  Minn. Stat. § 116B.03, subd. 1.  The

phrase "pollution, impairment, or destruction" is defined by MERA as either (1) "any conduct by any person which violates, or is likely to violate, any environmental quality standard, limitation, rule, order, license, stipulation agreement, or permit of the state" or (2) "any conduct which materially adversely affects or is likely to materially adversely affect the environment."  Minn. Stat. § 116B.02, subd. 5.

Plaintiffs allege that the continual sewage back-ups at SMH Park violate or are likely to violate three environmental quality standards: (1) Minn. Stat. § 115.061 (Water Pollution Control Act); (2) Minn. R. 7060.0600, subp. 2 (prohibition on improper discharge of sewage); (3) and Minn. R. 4630.0800, subp. 2 (regarding the construction standards of sewer lines).  ECF No. 1-2 ¶¶ 174–79.  Impact Defendants largely do not dispute that Plaintiffs' allegations sufficiently plead a plausible MERA claim.  ECF No. 16 at 17–21.  However, Impact Defendants quibble with Plaintiffs premising a MERA claim on Minn. R. 4630.0800, subp. 2, arguing that the construction standards applicable to sewer lines are not "environmental quality standard[s]" under Minn. Stat. § 116B.02, subd. 5.

"MERA . . . does not define what constitutes an environmental-quality standard." *Richland/Wilkin Joint Powers Auth. v. U.S. Army Corp. of Eng'rs*, 279 F. Supp. 3d 846, 876 (D. Minn. 2017) (quoting *State ex rel. Afremov v. Remes*, No. A14-2037, 2015 WL 4715316, at *5 (Minn. Ct. App. Aug. 10, 2015)).  However, the Minnesota Court of Appeals has explained that an "environmental quality standard" is a "standard, limitation, or rule with a primary purpose of protecting Minnesota's natural resources."  *Remes*, 2015 WL 4715316, at *7.

27

Plaintiffs assert that Minn. R. 4630.0800, subp. 2 is "not limited to construction," but cite only a 9-word phrase from the 124-word rule that purportedly relates to environmental standards.  ECF No. 32 at 21.  That suggests to the Court that the primary purpose of Minn. R. 4630.0800, subp. 2, is *not* the protection of Minnesota's natural resources.  Cognizant that "[a]lmost every human activity has some kind of adverse impact on a natural resource," *State ex rel. Schaller v. County of Blue Earth*, 563 N.W.2d 260, 265 (Minn. 1997) (citation omitted) (alteration in original), the Court concludes that Plaintiffs stretch the definition of "environmental quality standard" too far.  The primary purpose of Minn. R. 4630.0800, subp. 2, is dictating the relevant standards for building sewer lines, notwithstanding the fact that the construction of sewer lines (like the construction of most infrastructure) may have an incidental effect on Minnesota's natural resources.  The Court agrees with Impact Defendants that Minn. R. 4630.0800, subp. 2, is not an "environmental quality standard, limitation, or rule" under Minn. Stat. § 116B.02, subd. 5, and therefore cannot be used as a predicate violation under that specific provision of MERA.[9]

### ii. Mootness

If a plaintiff proves a violation of MERA, a court has "broad equitable power" to "grant declaratory relief, temporary and permanent equitable relief, or may impose such

---

[9] Plaintiffs astutely note, however, that Impact Defendants do not challenge the second form of liability imposed under Minn. Stat. § 116B.02, subd. 5: "conduct which materially adversely affects or is likely to materially adversely affect the environment." ECF No. 32 at 19 n.7.  The construction standards of Minn. R. 4630.0800, subp. 2 may therefore be relevant to Plaintiffs' MERA claim if they can prove violations of that rule that "materially adversely affect[] or [are] likely to materially adversely affect the environment."

conditions upon a party as are necessary or appropriate to protect the air, water, land or other natural resources located within the state from pollution, impairment, or destruction." *White Bear Lake Restoration Ass'n ex rel. State v. Minn. Dep't of Nat. Res.*, 946 N.W.2d 373, 383 n.6 (Minn. 2020) (quoting Minn. Stat. § 116B.07).  Impact Defendants highlight that MERA only provides for prospective declaratory or equitable relief and argue that because they no longer own or operate SMH Park, prospective equitable relief is no longer available against them.  ECF No. 16 at 18.

But Impact Defendants' attempt to pass the liability buck is not viable in light of the Eighth Circuit's holding in *Kennedy Building Associates v. Viacom, Inc.*, 375 F.3d 731 (8th Cir. 2004).  In *Viacom*, Westinghouse (which eventually became Viacom) owned a property in Minneapolis until 1980, which it polluted with toxic chemicals.  375 F.3d at 735–36. Westinghouse sold the property in 1980, and the property was sold again to Kennedy Building Associates in 1982.  *Id.* at 736–37.  After discovering the extent of the pollution at the property, Kennedy Building Associates sued Viacom, alleging a MERA claim.  *Id.* at 737.  The district court found Viacom liable for a MERA violation and ordered Viacom "to remediate the site's soil, groundwater, and building interior."  *Id.*

Although the Eighth Circuit ordered the district court to redraw the injunction "for more precise definition of the specific acts required of Viacom," the Eighth Circuit accepted that the district court could order Viacom—the former owner of the property—to remediate "past pollution to the extent past deposits pose a threat of continuing contamination of natural resources, including soil and water."  *Id.* at 747–48.  *Viacom* therefore illustrates that a former property owner may be held liable for a MERA violation

if the former owner's alleged conduct "pose[s] a threat of continuing contamination of natural resources." *Id.* at 747.

Plaintiffs' complaint alleges just that: according to Plaintiffs, Impact Defendants' failure to maintain and properly operate SMH Park's sewage system has led to sewage back-ups that continue to the present day. ECF No. 1-2 ¶¶ 53–54, 68, 71–74. Plaintiffs allege that these continual sewage back-ups continue to threaten the environmental quality of SMH Park's soil and water. *Id.* ¶¶ 53–54, 68, 72, 74, 179. If Plaintiffs' allegations are true, then the Court can order prospective relief against Impact Defendants in the form of remediation to prevent "ongoing releases of [sewage] into soil and groundwater." *Viacom*, 375 F.3d at 748. Indeed, Plaintiffs' complaint seeks such relief. *Id.* at 76 (requesting an "injunction ordering Defendants to perform all renovation and maintenance work needed to comply with health and safety laws"). Consequently, Plaintiffs' MERA claim against Impact Defendants is not moot or otherwise barred.

### iii. MPCA Settlement

Impact Defendants observe that a settlement was reached in fall 2021 between the MPCA and Sartell MHP regarding a single sewage back-up incident on Knox's property. ECF No. 16 at 19 n.4 (citing ECF No. 1-2 ¶ 65). Impact Defendants assert that Plaintiffs cannot impose greater obligations on them than the MPCA imposed in the settlement agreement. *Id.* In response, Plaintiffs assert that the settlement agreement between the MPCA and Sartell MHP does not preempt the MERA action. ECF No. 32 at 24–25.

"MERA does not authorize an injunction that imposes standards conflicting with substantive standards affirmatively imposed by the Minnesota Pollution Control Agency"

in a settlement agreement. *Viacom*, 375 F.3d at 744. However, a court may issue an injunction under MERA that "can co-exist" with the settlement agreement, so long as it does not "directly contradict[]" the settlement agreement. *Id.* at 743. The settlement agreement at issue here covers only a single sewage back-up incident that occurred on Knox's property in or around September 2021. *See* ECF No. 1-2 at 109–14. Therefore, if the Court were to issue an injunction under MERA for issues unrelated to the September 2021 sewage back-up on Knox's property, that injunction could fully "co-exist" with the settlement agreement, given that the settlement agreement has nothing to say about matters beyond the September 2021 sewage back-up incident on Knox's property. *Viacom*, 375 F.3d at 744. To the extent that Plaintiffs prevail on their MERA claim and the Court issues an injunction that touches upon the narrow incident resolved by the settlement agreement with the MPCA, the Court will be mindful to tailor an injunction that does not "directly contradict[]" the substantive standards imposed by the settlement agreement. *Id.*

### c. Count 6: Negligence (against Park Defendants)

Plaintiffs next allege a negligence claim against Park Defendants for failing to maintain SMH Park in a safe and sanitary condition. ECF No. 1-2 ¶¶ 181–88. Impact Defendants seek to dismiss this claim on multiple grounds.

#### i. Claims of Skaj, Eich, and Bandas

Impact Defendants first argue that the negligence claims of Plaintiffs Skaj, Eich, and Bandas must be dismissed because they have not adequately alleged an injury resulting from Park Defendants' negligence. ECF No. 16 at 21. Particularly, although the complaint alleges specific facts about how the sewage back-ups impacted Knox, ECF No. 1-2 ¶¶ 63–

31

65, the complaint contains no details about how Skaj, Eich, and Bandas were injured by the sewage back-ups. Plaintiffs respond that the complaint alleges sewage back-ups in the common areas of SMH Park, "endangering the health and welfare of all residents, including all Plaintiffs." ECF No. 32 at 25–26.

It is unclear whether Impact Defendants' reference to "standing" refers to Article III standing or a failure to plausibly allege the "injury" element of a negligence cause of action, but the Court will address Article III standing because it "must be decided first by the court and presents a question of justiciability." *Higgins Elec., Inc. v. O'Fallon Fire Prot. Dist.*, 813 F.3d 1124, 1128 (8th Cir. 2016) (citation omitted) (internal quotation marks omitted).

Article III of the U.S. Constitution limits the jurisdiction of the federal courts to "Cases" and "Controversies." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013). "[S]tanding is an essential and unchanging part of the case-or-controversy requirement." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To meet the "irreducible constitutional minimum" required to establish standing, a plaintiff has the burden to show three elements: "(1) the plaintiff suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Arc of Iowa v. Reynolds*, 94 F.4th 707, 710 (8th Cir. 2024) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). Moreover, "[t]he requirements for standing do not change in the class action context." *In re SuperValu, Inc.*, 870 F.3d 763, 768 (8th Cir. 2017) (citing *Spokeo*, 578 U.S. 338 n.6).

To satisfy the injury-in-fact requirement, a plaintiff must show an injury that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."

*Lujan*, 504 U.S. at 560.  To be "particularized," the injury must affect the plaintiff in a "personal and individual way."  *Id.* at 560 n.1.  Framing an injury in "broad generalities" is a red flag that an asserted injury may not be particularized.  *See McNaught v. Nolen*, 76 F.4th 764, 770 (8th Cir. 2023).

Here, Skaj, Eich, and Bandas fail to allege a particularized injury for their negligence claim.  Nowhere do they allege how the sewage back-ups at SMH Park injured their health, safety, or enjoyment of the property in a "personal and individual way."  *Lujan*, 504 U.S. at 560 n.1.  In fact, their names do not even appear in the complaint's factual allegations related to the sewage back-ups.  Although Plaintiffs allege that sewage has backed up in common areas of SMH Park, Skaj, Eich, and Bandas do not explain how these back-ups have impacted them personally, other than to claim, in "broad generalities," *McNaught*, 76 F.4th at 770, that the common area sewage back-ups "endanger[] the health and welfare of all residents," ECF No. 32 at 26.  That may be true, but there are no factual allegations in the complaint that demonstrate *how* that is true for Skaj, Eich, and Bandas.  And the potential standing of absent class members cannot save Skaj's, Eich's, and Bandas's negligence claim, because "named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong."  *Spokeo*, 578 U.S. at 338 n.6 (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 40 n.20 (1976)) (internal quotation marks omitted).  Because Skaj, Eich, and Bandas lack Article III standing to assert their negligence claims, the claims must be dismissed.  The Court will therefore consider whether Knox has plausibly alleged a negligence claim against Park Defendants.

ii. **Sufficiency of Allegations Related to Manufactured Home Park Standards**

Knox premises her negligence claim, in part, on Park Defendants' alleged violations of various state regulations on manufactured home parks. ECF No. 1-2 ¶ 185. This theory of liability implicates the doctrine of negligence per se, which "substitutes a statutory standard of care for the ordinary prudent person standard of care, such that a violation of a statute (or an ordinance or regulation adopted under statutory authority) is conclusive evidence of duty and breach." *Gradjelick v. Hance*, 646 N.W.2d 225, 231 n.3 (Minn. 2002). Impact Defendants assert that Knox fails to plausibly allege violations of several of those regulations:

- Minnesota Rule 4630.0600, subp. 2, which requires safe and sanitary water supply capable of "supplying a minimum of 150 gallons per day per mobile home."

- Minnesota Rules 4630.0600, subp. 4, and 4630.0800, subp. 2, which requires water and sewage riser pipes to extend at least four inches above ground elevation.

- Minnesota Rule 1350.3400, subp. 1–2, which requires water and waste piping to comply with the Minnesota Plumbing Code.

ECF No. 16 at 22–23.

Knox has sufficiently alleged that Park Defendants violated Minnesota Rule 4630.0600, subp. 2, by failing to provide a sufficient supply of safe and sanitary water. *See, e.g.*, ECF No. 1-2 ¶¶ 66 (detailing multiple water main ruptures); 63–68 (detailing

sewage back-ups through plumbing).  And Knox has also alleged violations of the Minnesota Plumbing Code, which states that "[p]roper protection shall be provided to prevent contamination of food, water, sterile goods, and similar materials by backflow of sewage."  Minn. R. 4714.0100(B); *see* ECF No. 1-2 ¶¶ 63–68 (detailing sewage back-ups).

However, the Court agrees with Impact Defendants that there are no factual allegations to support an inference that SMH Park failed to "have water and sewer riser pipes that extend at least four inches above ground," as required by Minnesota Rules 4630.0600, subp. 4, and 4630.0800, subp. 2.  ECF No. 1-2 ¶ 185.  Although it is true that a complaint need not include "detailed factual allegations," *Twombly*, 550 U.S. at 570, evaluating the sufficiency of a complaint's allegations is a "context-specific task," *Iqbal*, 556 U.S. at 679.  In the present context, Knox herself has introduced the need for detail by asserting violations of very specific regulations relating to riser pipe height.  Stripping away the legal conclusion that Park Defendants violated those regulations leaves no facts that "permit the court to infer more than the mere possibility" that those regulations were violated.  *Id.*; *see Twombly*, 550 U.S. at 555 (explaining that a court does not accept legal conclusions as true).  Accordingly, based on the present pleadings, the Court will not permit Knox to premise her negligence claim on violations of the riser pipe height regulations in Minnesota Rules 4630.0600, subp. 4, and 4630.0800, subp. 2.

### iii.  Sufficiency of Allegations Related to Groundwater Pollution

Knox also premises her negligence claim, in part, on violations of Minn. R. 7060.0600, subp. 2, which prohibits sewage discharges "to the unsaturated zone in a way

that may result in pollution to the underground waters."[10]  *In re Denial of Contested Case Hearing Requests*, 993 N.W.2d 627, 663 (Minn. 2023).  Although Impact Defendants do not contest that Knox has adequately pleaded a violation of this regulation, they assert that Knox has failed to allege that she was injured as a proximate cause of this violation.  ECF No. 16 at 23–25.

Proximate cause and injury are indispensable elements of a negligence claim.  *See Staub v. Myrtle Lake Resort, LLC*, 964 N.W.2d 613, 620–21 (Minn. 2021).  But at the pleading stage, all the plaintiff must do is plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]."  *Twombly*, 550 U.S. at 556. Here, Knox submitted with her complaint the MPCA's Notice of Violation and Administrative Penalty Order relating to the September 2021 sewage discharge, both of which allege violations of Minn. R. 7060.0600, subp. 2.  ECF No. 1-2 ¶¶ 109, 119.  Knox also alleges that the sewage discharges "illegally jeopardiz[e] the health and safety of [SMH Park] residents by subjecting them to the known risk of toxic pollutant exposure and contaminating nearby water supplies."  *Id.* ¶ 54.  Knox is not an environmental expert, and naturally, she may not know the exact mechanism of how groundwater pollution may be impacting her health.  These issues, however, should be resolved during litigation, possibly with the assistance of expert testimony, and are not an appropriate basis for granting a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *See Hogate v. Citgo Petroleum Corp.*, No. 09-cv-3511 (PAM/JSM), 2010 WL 11537435, at *3 (D. Minn. May 12, 2010)

---

[10]    The unsaturated zone is groundwater above the water table.  *See* Minn. R. 7060.0300, subp. 7.

(explaining that Fed. R. Civ. P. 12(b)(6) does not "requir[e] the presence of expert testimony simply to survive the pleading stage"). Knox has plausibly alleged violations of Minn. R. 7060.0600, subp. 2, and has raised a "reasonable expectation that discovery will reveal evidence" that those violations jeopardize Knox's health and safety. *Twombly*, 550 U.S. at 556.

### iv.   Duty to Notify the MPCA and the Public

Knox next alleges that Park Defendants breached their statutory duty to notify the MPCA and the impacted public of potential water pollution at SMH Park. ECF No. 1-2 ¶ 184 (citing Minn. Stat. § 115.061(a, c)). Impact Defendants assert that Minn. Stat. § 115.061 does not contain a private right of action. ECF No. 16 at 23.

True, but that's a misplaced concern. Knox is not seeking to bring a cause of action under Minn. Stat. § 115.061 but, rather, is using that statute to frame Park Defendants' duty of care in her negligence per se claim. While a statute may not by its own terms confer a private right of action, this "merely means that [such statutes] do not provide statutory causes of action, and that a party suing for violation of [them] must do so under a common law action," such as negligence per se. *Engvall v. Soo Line R.R. Co.*, 632 N.W.2d 560, 568–69 (Minn. 2001); *see Seim v. Garavalia*, 306 N.W.2d 806, 811 (Minn. 1981) ("[S]tatutes forming the basis of a negligence per se action are often penal and do not expressly provide for a civil action.").

Based on existing Minnesota law, however, the Court concludes that Knox cannot use Minn. Stat. § 115.061 as a statute on which to premise a negligence per se claim. The parties have not cited, and the Court has not found, an instance in which a party has

premised a negligence per se claim on a violation of Minn. Stat. § 115.061. Impact Defendants note that the Minnesota Supreme Court has held that a sheriff department's failure to timely notify a crime victim's parents of their rights under the Crime Victims Reparations Act, as required by statute, cannot be used to frame a negligence duty of care. *Bruegger v. Faribault Cnty. Sheriff's Dep't*, 497 N.W.2d 260, 261–62 (Minn. 1993). The Court so held because "no common law duty required the sheriff's department to inform the [parents] of their potential rights of recovery under the CVRA," and therefore the "requirement to inform did not arise until the enactment of the CVRA." *Id.* at 262.

The notification statute in *Bruegger* is similar to Minn. Stat. § 115.061 in certain respects: both require a party to directly notify a person affected by some conduct. Applying *Bruegger* to the notification requirements of Minn. Stat. § 115.061, Knox must therefore show the existence of some common-law duty to inform members of the public impacted by pollution. 497 N.W.2d at 262. Knox does not do so, instead summarily asserting that Minn. Stat. § 115.061 is "an example of one of many duties that Defendants have to maintain SMH Park in safe and sanitary condition." ECF No. 32 at 28. That naked assertion does not grapple with *Bruegger*'s holding or the requirements of the negligence per se doctrine, so in the absence of any developed argument from Knox, the Court will not expand state law in a manner that appears inconsistent with *Bruegger*. *See Ashley County v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009) (cleaned up) (citations omitted)

("It is not the role of a federal court to expand state law in ways not foreshadowed by state precedent.").[11]

### d. Count 7: Private Nuisance (against Park Defendants)[12]

#### i. Claims of Skaj, Eich, and Bandas

An action for private nuisance "may be brought by any person whose property is injuriously affected or whose personal enjoyment is lessened by the nuisance." Minn. Stat. § 561.01. Because Knox alleges repeated sewage back-ups into her home, ECF No. 1-2 ¶¶ 63–66, Impact Defendants do not dispute that she has plausibly alleged a private nuisance claim. However, Impact Defendants renew their argument that the nuisance claims of Skaj, Eich, and Bandas must be dismissed because the complaint contains no details about how they were injured by the sewage back-ups. ECF No. 16 at 25–26.

Plaintiffs respond that the sewage back-ups in the common areas of SMH Park constitute a private nuisance to Skaj, Eich, and Bandas. ECF No. 32 at 29. Impact Defendants' only response is that nuisance claims premised on sewage back-ups in the

---

[11]    This holding should not be read to categorically reject the notion that Minn. Stat. § 115.061 could serve as a predicate violation for a negligence per se claim. The Court could see how a party might have a common-law duty to inform the impacted public of pollution. *See, e.g.*, *Domagala v. Rolland*, 805 N.W.2d 14, 23 (Minn. 2011) (holding that a defendant has a duty of reasonable care when the defendant's conduct creates a dangerous situation). But Knox does not make that argument, so the Court does not address it. *See Foxpoint Ventures, Inc. v. Vegalab, Inc.*, No. 20-cv-2011 (NEB/ECW), 2021 WL 6777601, at *2 n.1 (D. Minn. Mar. 22, 2021) (observing that party's failure to respond to an argument in a motion to dismiss constitutes forfeiture of that argument).

[12]    There are two forms of nuisance: public and private. *See Clean Water & Air Legacy, LLC v. Tofte Wastewater Treatment Ass'n*, 649 F. Supp. 3d 764, 773–75 (D. Minn. 2023) (describing the two forms of nuisance). Plaintiffs' complaint only invokes a claim for private nuisance. *See* ECF No. 1-2 ¶¶ 189–93 (citing only the statute for private nuisance).

common areas are barred by the statute of limitations.  ECF No. 16 at 25–26.  But the complaint alleges, without any temporal limitation, that SMH Park's sewage system "leak[s] onto resident rented lots and community spaces," and that the sewage issues "have not been remedied."  ECF No. 1-2 ¶¶ 53–54, 72, 74.  Construing the complaint in the light most favorable to Plaintiffs as the Court must at this motion-to-dismiss stage, *Clean Water & Air Legacy, LLC v. Tofte Wastewater Treatment Ass'n*, 649 F. Supp. 3d 764, 772 (D. Minn. 2023), Plaintiffs have alleged sewage leaks into the community spaces of SMH Park that have continued during the limitations period.  And because property is "injuriously affected" by continual sewage back-ups, Skaj, Eich, and Bandas have plausibly alleged a private nuisance claim.[13]  *See Batcher v. City of Staples*, 139 N.W. 140, 141 (Minn. 1912) (holding sewage discharged onto plaintiff's property constitutes a nuisance).

### ii.  Condition of Recurring or Continuing Nature

Impact Defendants next argue that Minnesota law requires a nuisance to be "a condition of recurring or continuing nature," and assert that Plaintiffs only assert single events of sewage back-ups.  ECF No. 16 at 26–27.  Impact Defendants are correct that some courts in this District have interpreted Minnesota law such that "a single event . . . cannot form the basis of a nuisance claim."  *Soo Line R.R. Co. v. Werner Enters.*, 8 F. Supp. 3d 1130, 1142 (D. Minn. 2014).  But Plaintiffs allege that *systemic* issues with SMH Park's

---

[13]    This is true even though Skaj, Eich, and Bandas have not alleged how their "personal enjoyment is lessened by the nuisance."  Minn. Stat. § 561.01.  The statute offers a private right of action to two different persons: "(1) a person whose property is injuriously affected, and (2) a person whose personal enjoyment is lessened by the nuisance."  *Tofte Wastewater Treatment Ass'n*, 649 F. Supp. 3d at 775.  Skaj, Eich, and Bandas fall into the first category of persons and therefore need not show how their personal enjoyment has been lessened.

sewage system have led to *continual* sewage back-ups in residents' homes and park common areas. ECF No. 1-2 ¶¶ 53–54, 72, 74. These allegations describe far more than a "single act or event," which is what the purported "condition of recurring or continuing nature" element of a nuisance claim seeks to prohibit. *Werner Enters.*, 8 F. Supp. 3d at 1141; *see Johnson v. City of Fairmont*, 247 N.W. 572, 572–73 (Minn. 1933) (repeated discharge of sewer onto plaintiff's property constitutes a nuisance). That is enough at this early pleading stage.

### e. Count 8: Violation of Manufactured Home Park Standards (against Park Defendants)

Minnesota law requires manufactured home parks to have a caretaker to "maintain the park or area, and its facilities and equipment in a clean, orderly and sanitary condition." Minn. Stat. § 327.20, subd. 1(1). Manufactured home parks must also "be well drained and be located so that the drainage of the park area will not endanger any water supply," and must maintain its plumbing in accordance with the Minnesota Plumbing Code. *Id.*, subd. 1(2), (5). "Any person injured or threatened with injury by a violation" of these rules may bring a private action to enforce the rules. Minn. Stat. § 327.24, subd. 3.

### i. Sufficiency of Allegations Related to Violation of Park Standards

As described above, the Court has construed Plaintiffs' complaint to allege systemic issues with SMH Park's sewage system that has led to continual sewage back-ups in residents' homes and park common areas. ECF No. 1-2 ¶¶ 53–54, 72, 74; *cf. id.* at 92–93, 127–30. That conclusion largely disposes of Impact Defendants' argument that Plaintiffs have failed to plausibly allege violations of Minn. Stat. § 327.20, subd. 1. *See* ECF No. 16

at 28–29.  A manufactured home park that experiences repeated sewage back-ups is, clearly, not maintained in a "clean, orderly and sanitary condition."  Minn. Stat. § 327.20, subd. 1(1).  Nor does such a park maintain its plumbing in accordance with applicable state regulations, Minn. Stat. § 327.20, subd. 1(5), which demand that "[p]roper protection shall be provided to prevent contamination of food, water, sterile goods, and similar materials by backflow of sewage," Minn. R. 4714.0100(B).  And repeated sewage leaks and back-ups raise a reasonable inference that SMH Park is not "well drained," and that wastewater from SMH Park is being "deposited on the surface of the ground."  Minn. Stat. § 327.20, subd. 1(2); *see Gorog*, 760 F.3d at 792 (requiring the Court to draw all reasonable inferences in favor of the Plaintiffs).  Plaintiffs have adequately pleaded substantive violations of Minn. Stat. § 327.20, subd. 1.

## ii. Claims of Skaj, Eich, and Bandas

Impact Defendants renew their argument that because Skaj, Eich, and Bandas have not alleged sewage leaks into their homes or rented lots, they cannot bring a private action under Minn. Stat. § 327.24, subd. 3.  ECF No. 16 at 27–28.  The Court has already concluded that Plaintiffs have pleaded substantive violations of Minn. Stat. § 327.20, subd. 1, but the question here is whether Skaj, Eich, and Bandas have standing to sue for those violations under Minn. Stat. § 327.24, subd. 3.

As noted in the Court's negligence analysis, there are no allegations in the complaint describing how Skaj, Eich, and Bandas have been injured in the past by the sewage back-ups at SMH Park.  But notably, unlike a negligence claim, plaintiffs seeking redress under Minn. Stat. § 327.24, subd. 3 need not show that they have been "injured"; rather, it suffices

that a plaintiff plausibly alleges that she is "threatened with injury." In the standing context, a "threatened injury" must be "certainly impending" and not "speculative." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

At the very least, Skaj, Eich, and Bandas have plausibly alleged a "certainly impending" injury from the failure to keep SMH Park in "clean, orderly and sanitary condition." Minn. Stat. § 327.20, subd. 1. A sewage back-up at SMH Park is not merely speculative; according to Plaintiffs, residents "frequently report sewer discharges" due to the systemic sewer issues at SMH Park. ECF No. 1-2 ¶ 74. And the fact that sewage back-ups have repeatedly occurred to SMH Park residents and in SMH Park common areas bolster Skaj's, Eich's, and Bandas's claims of threatened injury. *See O'Shea v. Littleton*, 414 U.S. 488, 496 (1974) ("[P]ast wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury."). Taking these allegations as true, it is far from speculative that Skaj, Eich, and Bandas would be injured by the dirty and unsanitary conditions from a sewage back-up—whether in their own homes or in a community area of SMH Park. The Court therefore concludes that Skaj, Eich, and Bandas may maintain their claims under Minn. Stat. § 327.24, subd. 3.

## III.    Water Meter Issues

### a.    Count 3: Utility Billing Issues

Although Impact Defendants do not formally move to dismiss Count 3, they argue that the injunctive relief sought against them under Count 3 is moot because they no longer own SMH Park. ECF No. 16 at 15–17. Relevant to Count 3, Plaintiffs request the following injunctive relief:

An injunction ordering Defendants to take adequate steps to remove the Neptune Meters and either:

    a.    Return to a flat-fee billing system where each household is charged the same amount each month, or

    b.    Replace the current utility meters with working units that properly and accurately measure electricity usage for each home in the SMH Park.

ECF No. 1-2 at 76. Plaintiffs offer no response to Impact Defendants' argument that this requested injunctive relief is moot against Impact Defendants, which alone would justify dismissing this request for injunctive relief. *See Dorosh v. Minn. Dep't of Hum. Servs.*, No. 23-cv-1144 (ECT/LIB), 2023 WL 6279374, at *9 (D. Minn. Sept. 26, 2023) ("A plaintiff waives its claims by failing to respond to a defendant's arguments on a motion to dismiss."). On the merits, the Court agrees with Impact Defendants that injunctive relief to "remove the Neptune Meters" is moot against the Impact Defendants. A request for injunctive relief may become moot against a defendant when the defendant no longer possesses the "authority and power" to execute the injunctive relief. *Randolph v. Rodgers*, 253 F.3d 342, 346 (8th Cir. 2001). Here, Impact Defendants no longer have any ownership interest in the property at SMH Park, ECF No. 1-2 ¶ 17, and therefore lack the "authority and power" to remove any personal property at SMH Park (let alone establish a new billing system). *Randolph*, 253 F.3d at 346; *see German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 549 (S.D.N.Y. 1995) (holding that plaintiffs could not seek injunctive relief against former owner of building to require abatement of lead paint); *Steelman v. Hoch*, No. 4:12CV79 JAR, 2012 WL 4513864, at *1 (E.D. Mo. Oct. 1, 2012) (request for injunctive relief under the Americans with Disabilities Act was moot when defendant sold

44

the premises at issue).  Rather, those requests for injunctive relief are properly directed toward SMH Park's current owners, Gemstone Communities and Sartell MHC. Accordingly, the Court dismisses Plaintiffs' request for injunctive relief under Count 3 against Impact Defendants.

## IV.    Lease Agreement Issues

The Court turns next to the causes of action alleged by Plaintiffs relating to the lease agreement issues.  As a refresher, these causes of action allege that Impact Defendants fraudulently induced SMH Park residents to sign new leases that contained provisions different from and more oppressive than their original leases.

### a.    Count 1: Fraud (against Impact Defendants)

To plausibly allege a fraud claim under Minnesota law, a plaintiff must plead facts showing that: (1) the defendant made a false representation of a past or existing material fact susceptible of knowledge; (2) the defendant made the representation with knowledge of its falsity or without knowing whether it was true or false; (3) the defendant intended for the plaintiff  to act in reliance thereon; (4) the representation caused the plaintiff to act in reliance thereon; and (5) the plaintiff suffered pecuniary damages as a result of the reliance. *See Valspar Refinish, Inc. v. Gaylord's Inc.*, 764 N.W.2d 359, 368 (Minn. 2009).  The elements of fraud must also be pleaded with particularity, pursuant to the heightened pleading standard of Fed. R. Civ. P. 9(b).  *See Stephenson v. Deutsche Bank AG*, 282 F. Supp. 2d 1032, 1060 (D. Minn. 2003).

### i. Claims of Knox and Eich

Impact Defendants do not dispute that Skaj and Bandas have plausibly stated a civil fraud claim. ECF No. 16 at 33–35. However, Impact Defendants argue that Knox's and Eich's fraud claims must be dismissed because they did not sign the new, more oppressive leases. *Id.* at 34–35. At oral argument, Plaintiffs conceded that Knox and Eich could not establish the reliance element of their fraud claim. Accordingly, the Court dismisses Knox's and Eich's fraud claims. *See Anderson v. City of St. Paul*, No. 15-cv-1636 (PJS/HB), 2016 WL 614384, at *3–4 (D. Minn. Feb. 16, 2016) (accepting party's concession at oral argument in deciding a motion to dismiss), *aff'd*, 849 F.3d 773 (8th Cir. 2017).

### ii. Availability of Declaratory Relief

Plaintiffs seek a declaration "setting forth that the lease terms from residents' leases that were in effect before residents were fraudulently induced to sign new, invalid, and unnecessary leases remain in effect." ECF No. 1-2 at 77. Impact Defendants observe that declaratory relief is limited to prospective relief and cannot be used to "proclaim liability for a past act." *Just. Network Inc. v. Craighead County*, 931 F.3d 753, 764 (8th Cir. 2019) (citation omitted). But the declaratory relief sought in the complaint essentially requests a declaration that the new leases of Skaj and Bandas are unenforceable. That presents an appropriate request for declaratory relief. *See Guidant Sales Corp. v. George*, No. 05-cv-2890 (PAM/JSM), 2006 WL 3307633, at *4 (D. Minn. Nov. 14, 2006) (citing *E.W. Blanch Co. v. Enan*, 124 F.3d 965, 968 (8th Cir. 1997)) ("Disputes over the meaning or

enforceability of a contract present actual controversies that may be settled through a declaratory judgment.").

### b. Count 2: MDTPA and MCFA Claims (against Impact Defendants)

### i. Mootness of MDTPA Claims

Impact Defendants correctly note that the sole remedy for MDTPA claims is injunctive relief.  ECF No. 16 at 35; *see Gardner v. First Am. Title Ins. Co.*, 296 F. Supp. 2d 1011, 1020 (D. Minn. 2003) (citing *Simmons v. Modern Aero, Inc.*, 603 N.W.2d 336, 339 (Minn. Ct. App. 1999)).  Accordingly, to state a plausible MDTPA claim, a plaintiff must allege that the defendant's conduct threatens future harm to the plaintiff.  *Gardner*, 296 F. Supp. 2d at 1020.  However, Impact Defendants argue that a request for injunctive relief is moot against Impact Defendants because they no longer own or operate SMH Park, and therefore, their conduct threatens no future harm to Plaintiffs.  ECF No. 16 at 35.

Plaintiffs tacitly acknowledge that they cannot obtain injunctive relief against Impact Defendants, but note that in their prayer for relief, Plaintiffs requested "[e]nhanced statutory penalties under Minn. Stat. § 325F.71 on behalf of class members who are senior citizens or disabled."  ECF No. 1-2 at 77.  Minnesota Statutes, section 325F.71, subdivision 2 provides for an "additional civil penalty not to exceed $10,000" for each violation of a predicate statute (including the MDTPA) when that violation is perpetrated against a "senior citizen" or "disabled person."

Even if the civil penalty in Minn. Stat. § 325F.71 could save an otherwise moot MDTPA claim—a question that this Court does not reach—that civil penalty cannot save these Plaintiffs' claims.  Again, the Court reminds Plaintiffs that "[t]he requirements for

standing do not change in the class action context." *In re SuperValu*, 870 F.3d at 768 (citing *Spokeo*, 578 U.S. at 338 n.6). Therefore, at least one of the named plaintiffs must have Article III standing in order to maintain a claim in a putative class action. *Id.* As Plaintiffs conceded at oral argument, there are no allegations that any of the named Plaintiffs is a "senior citizen" or "disabled person," as those terms are defined in Minn. Stat. § 325F.71, subd. 1. "[N]amed plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Simon*, 426 U.S. at 40 n.20. Even if absent class members may have standing to pursue civil penalties under Minn. Stat. § 325F.71, the named Plaintiffs have not shown they are entitled to seek such relief. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ("[P]laintiffs must demonstrate standing for each claim that they press and for each form of relief they seek . . . ."). Because any request for injunctive relief under the MDTPA is moot, and because the named Plaintiffs have failed to establish standing to seek penalties under Minn. Stat. § 325F.71, Plaintiffs' MDTPA claim must be dismissed.

### ii. MCFA Claims of Knox and Eich

The MCFA was adopted "to prohibit deceptive practices and to address the unequal bargaining power often present in consumer transactions." *Ly v. Nystrom*, 615 N.W.2d 302, 308 (Minn. 2000). The MCFA prohibits the "act, use, or employment by any person of any fraud, unfair or unconscionable practice, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in

connection with the sale of any merchandise."[14]  Minn. Stat. § 325F.69, subd. 1.  The MCFA

provides a private right of action to an "injured" consumer for a violation of the MCFA to

recover damages, costs, disbursements, attorneys' fees, and other equitable relief.  Minn.

Stat. § 325F.70, subd. 3.  Like a civil claim for fraud, a claim under the MCFA must be

pleaded with particularity under Fed. R. Civ. P. 9(b).  *See Grady v. Progressive Direct Ins.*

*Co.*, 643 F. Supp. 3d 929, 935 (D. Minn. 2022).

Impact Defendants argue that Knox's and Eich's MCFA claims must be dismissed

because they did not sign the new, more oppressive leases, and therefore are not "injured"

consumers.  ECF No. 16 at 34–35.  The MCFA does not define what it means to be

"injured."  But prior to 2023, the MCFA contained no private right of action, and private

plaintiffs seeking redress for a violation of the MCFA were required to sue under

Minnesota's Private Attorney General Statute, Minn. Stat. § 8.31, subd. 3a.  *See Grady*,

643 F. Supp. 3d at 936 n.2; *cf.* Laws of Minnesota 2023, ch. 52, art. 19, § 15 (establishing

MCFA's private right of action).  The Private Attorney General Statute provides a cause of

action for a person "injured" by a violation of a predicate statute to seek damages, costs,

fees, and equitable relief.  Minn. Stat. § 8.31, subd. 3a.  Given the historical connection

between the MCFA and the Private Attorney General Statute, and the use of the term

"injured" in both statutes, the Court finds it appropriate to look to case law interpreting the

term "injured" in the Private Attorney General Statute to determine the meaning of that

same term in the MCFA's private right of action.

---

[14]    "[R]eal estate" is considered "merchandise" under the MCFA.  Minn. Stat.
§ 325F.68, subd. 2.

The Minnesota Supreme Court has defined "injury" in the Private Attorney General Statute as "hurt, damage, or loss sustained." *Engstrom v. Whitebirch, Inc.*, 931 N.W.2d 786, 791 (Minn. 2019) (evaluating claim under the MCFA). Pecuniary loss unquestionably counts as an "injury" under the statute. *Id.* For example, in *Engstrom*, the plaintiff alleged that he was "injured" by attorney fees that he had to pay to "determine his liability in response to [alleged] fraudulent demands and threats from" the defendant. *Id.* The Minnesota Supreme Court concluded that although it "need not define for all time the 'injury' required to trigger rights under the private attorney general statute," there was "no question that 'injury' includes the pecuniary loss" alleged by the plaintiff. *Id.*

Applying *Engstrom* to this case, Eich's MCFA claim must be dismissed. There is simply no allegation—let alone one pleaded with particularity—about how Eich was impacted by or reacted to the alleged false statements made by SMH Park management. Eich's MCFA's claim cannot proceed without an allegation that Eich was "injured" by those allegedly false statements. *See* Minn. Stat. § 325F.70, subd. 3.

However, Knox's MCFA claim may proceed because she alleges an injury nearly identical to the one at issue in *Engstrom*. Knox alleges that when she was presented with the alleged false statements by SMH Park management, she sought the "advice of counsel," who told Knox not to sign the new lease. ECF No. 1-2 ¶ 116. It is not clear from this allegation whether Knox paid for an attorney, or whether the "advice of counsel" was free. But the Court is required at this stage to draw all reasonable inferences in the plaintiff's favor, even under Rule 9(b)'s heightened pleading standard, *see United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 555–56 (8th Cir. 2006), and it is reasonable to infer

50

that Knox paid for the assistance of counsel.  If she did so, then her injury is identical to the injury in *Engstrom*, because Knox paid for an attorney to "determine [her] liability in response to [alleged] fraudulent demands and threats from" the defendant.[15]  *Engstrom*, 931 N.W.2d at 791.  For that reason, Knox's MCFA claim may proceed.

### c.  Count 9: Imposition of New Rules (against Park Defendants)

Minnesota law restricts changes that manufactured home park owners can make to existing leases: "[a] rule adopted or amended after the resident initially enters into a rental agreement may be enforced against that resident only if the new or amended rule is reasonable and is not a substantial modification of the original agreement." Minn. Stat. § 327C.02, subd. 2.  The park owner must also provide 60 days' notice in writing of any rule change.  *Id.*  A "rule" is "any rental agreement provision, regulation, rule or policy through which a park owner controls, affects or seeks to control or affect the behavior of residents."  Minn. Stat. § 327C.015, subd. 16.

Plaintiffs allege that the more oppressive terms in the new leases constitute an unenforceable "rule" under Minn. Stat. § 327C.02, subd. 2, and that "the continued enforcement of these wrongfully-obtained, invalid, and unnecessary leases constitute continuous violation of this statute."  ECF No. 1-2 ¶¶ 199–201.  Impact Defendants do not dispute that Skaj and Bandas have plausibly stated a violation of Minn. Stat. § 327C.02, subd. 2, but argue that Knox's and Eich's claims must be dismissed because they did not

---

[15]    Even if Knox had sought free legal advice, that also may assert an injury under the MCFA.  *See Engstrom*, 931 N.W.2d at 791 n.7 (leaving open the question of whether a plaintiff is "injured" under the Private Attorney General Statute when the person "retain[s] a pro bono attorney" or "spen[ds] time to personally investigate a fraudulent demand").

sign the new leases.  ECF No. 16 at 34–35.  Plaintiffs provide no specific response to Impact Defendants' argument.

The Court agrees with Impact Defendants.  The "rules" of which Plaintiffs complain are the allegedly more oppressive terms in the new leases, "the continued enforcement" of which "constitutes continuous violation of" Minn. Stat. § 327C.02, subd. 2.  ECF No. 1-2 ¶ 200.  But by their own admission, Knox and Eich did not sign the new leases, so those more oppressive terms are *not* being enforced against them.  *Id.* ¶¶ 116, 118.  Knox and Eich have therefore failed to allege how they are being injured by any new manufactured home park rules, which defeats their standing to pursue relief for a violation of Minn. Stat. § 327C.02, subd. 2.  *See Lujan*, 504 U.S. at 560 & n.1 (explaining that Article III standing requires plaintiffs to allege a particularized injury).  The Court therefore dismisses Knox's and Eich's claims under Minn. Stat. § 327C.02.

*          *          *

Given the potential for confusion as to which claims are dismissed (and as to which Plaintiffs and Defendants), the following chart summarizes how Plaintiffs' causes of action may proceed (chart is on the next page):

| Count | Remaining Plaintiffs | Remaining Defendants | Limitations |
|---|---|---|---|
| Count 1: Fraud | Skaj and Bandas | Impact Defendants | None |
| Count 2: MDTPA | None | None | This claim is dismissed. |
| Count 2: MCFA | Knox, Skaj, and Bandas | Impact Defendants | None |
| Count 3: Utility Billing | Knox, Skaj, Eich, and Bandas | Park Defendants | Request for injunctive relief is moot against Impact Defendants. |
| Count 4: Breach of Contract | Knox, Skaj, Eich, and Bandas | Sartell MHP Sartell MHP 2 Gemstone Sartell MHC | Six-year statute of limitations.<br><br>Plaintiffs may not pursue a "duty to warn" theory of liability against Remaining Defendants. |
| Count 5: MERA | Knox, Skaj, Eich, and Bandas | Park Defendants | Six-year statute of limitations.<br><br>Minn. R. 4630.0800, subp. 2 cannot be used as an "environmental quality standard" under Minn. Stat. § 116B.02, subd. 5. |
| Count 6: Negligence | Knox | Park Defendants | Six-year statute of limitations.<br><br>Knox may not premise her negligence claim on violations of the riser pipe height regulations in Minnesota Rules 4630.0600, subp. 4, and 4630.0800, subp. 2, or on the notification requirement in Minn. Stat. § 115.061. |
| Count 7: Nuisance | Knox, Skaj, Eich, and Bandas | Park Defendants | Six-year statute of limitations. |
| Count 8: Manufactured Home Park Standards | Knox, Skaj, Eich, and Bandas | Park Defendants | None |
| Count 9: Imposition of New Rules | Skaj and Bandas | Park Defendants | None |

## <u>CONCLUSION</u>

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.     Reynolds and Rolfe's Motion to Dismiss (ECF No. 7) is **GRANTED.** Counts 1 and 2 against Reynolds and Rolfe are **DISMISSED WITHOUT PREJUDICE**.

2.     Impact Defendants' Motion to Dismiss (ECF No. 14) is **GRANTED IN PART** and **DENIED IN PART** as follows:

   a.   The claims of Knox and Eich in Count 1 of the complaint are **DISMISSED WITHOUT PREJUDICE.**

   b.   The MDTPA claim in Count 2 is **DISMISSED WITHOUT PREJUDICE**.

   c.   Plaintiffs' request for injunctive relief against Impact Defendants in Count 3 of the complaint is **DISMISSED WITHOUT PREJUDICE**.

   d.   Count 4 of the complaint is **DISMISSED WITHOUT PREJUDICE** to the extent it asserts a "duty to warn" theory of liability.

   e.   Counts 4, 5, 6, and 7 are **DISMISSED WITHOUT PREJUDICE** to the extent they seek to impose liability outside of the six-year statute of limitations.

   f.   Count 5 of the complaint is **DISMISSED WITHOUT PREJUDICE** to the extent the claim relies on Minn. R. 4630.0800, subp. 2 as an "environmental quality standard" under Minn. Stat. § 116B.02, subd. 5.

   g.   The claims of Skaj, Eich, and Bandas in Count 6 of the complaint are **DISMISSED WITHOUT PREJUDICE**.

    h. Knox's claim in Count 6 of the complaint is **DISMISSED WITHOUT PREJUDICE** to the extent Count 6 premises a negligence claim on violations of the riser pipe height regulations in Minnesota Rules 4630.0600, subp. 4, and 4630.0800, subp. 2, or on the notification requirement in Minn. Stat. § 115.061.

    i. The claims of Knox and Eich in Count 9 of the complaint are **DISMISSED WITHOUT PREJUDICE**.

Dated: May 2, 2025                   *s/Laura M. Provinzino*
                                      Laura M. Provinzino
                                        United States District Judge