# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

MARCIE KNOX; CHERYL SKAJ; JANET EICH; and BRADLEY BANDAS; *individually and on behalf of all others similarly situated*,

Case No. 24-cv-4235 (LMP/LIB)

Plaintiffs,

v.

**ORDER**

IMPACT MHC MANAGEMENT, LLC; SARTELL MHP, LLC; SARTELL MHP 2, LLC; GEMSTONE COMMUNITIES, LLC; and SARTELL MHC, LLC,

Defendants.

Allison R. Zakon, Anne M. Lockner, Geoffrey H. Kozen, Rashanda C. Bruce, and Brandon O. Redmon, **Robins Kaplan LLP, Minneapolis, MN**; Mary Kaczorek, **Mid-Minnesota Legal Aid, Minneapolis, MN**, and Chace Huntzinger and Mateen Zubair Shah, **Mid-Minnesota Legal Aid, St. Cloud, MN** for Plaintiffs.

Isak Peter Hawkinson, **Rinke Noonan, St. Cloud, MN**; and Peter W. Joelson, **Joelson Rosenberg PLC, Farmington Hills, MI**, for Defendants Gemstone Communities, LLC and Sartell MHC, LLC.

Plaintiffs, who are tenants of Sartell Mobile Home Park ("SMH Park"), brought suit against Defendants, alleging that they failed to properly maintain sewage systems at SMH Park, that they illegally and excessively billed for residents' water use, and that they fraudulently induced Plaintiffs to sign leases that contained illegal and oppressive terms. *See* ECF No. 1-2 ¶¶ 53–119.  Plaintiffs have now reached a settlement with Defendants Gemstone Communities, LLC and Sartell MHC, LLC (collectively, "Gemstone Defendants").  ECF No. 75-1.  The settlement provides for comprehensive corrective action

1

at SMH Park, including sewage system repairs and ongoing maintenance, soil testing and remediation, monitoring for abnormal water-usage charges, and lease protections allowing residents to continue under month-to-month leases or new standard leases. *See id.* at 6–10. The parties move for final certification of a settlement class and final approval of the settlement. ECF No. 101. The Court grants that motion.

The settlement agreement also authorizes Plaintiffs to seek attorneys' fees and costs up to $15,000, and for Plaintiffs to seek service awards of $5,000 each. ECF No. 75-1 at 10–11. Plaintiffs now move for those fees, costs, and service awards. ECF No. 89. For the following reasons, that motion is also granted.

## BACKGROUND

Plaintiffs are residents of SMH Park in Sartell, Minnesota. ECF No. 1-2 ¶¶ 8–11. Defendants Impact MHC Management, LLC, Sartell MHP, LLC, and Sartell MHP 2, LLC (collectively, "Impact Defendants") owned, operated, or managed SMH Park at various times from 2014 to 2024. *Id.* ¶¶ 12–17, 28–34. During Impact Defendants' ownership of SMH Park, Plaintiffs allege that Impact Defendants failed to maintain the park's water and sewage infrastructure, leading residents to live in "unhabitable and unsanitary conditions." *Id.* ¶¶ 70, 72, 74–77. Plaintiffs also allege that Impact Defendants' use of Neptune ProCoder 5/8 T-10 water and sewage meters led to "wildly inaccurate and inconsistent" water and sewage usage readings, resulting in "huge invoices to SMH Park residents that are not accurate measures of their water and sewage usage." *Id.* ¶¶ 81, 86. Plaintiffs finally allege that they were pressured to sign new leases in late 2023 that were "illegal and oppressive" and included new fees for credit or debit transactions to pay rent, a requirement

2

to pay rent online and before the first of the month, an increased security deposit, a new pet fee, an increased late fee, and a new returned check fee. *Id.* ¶¶ 111–15. In June 2024, Gemstone purchased SMH Park through a special-purpose subsidiary, Sartell MHC, which currently operates SMH Park. *Id.* ¶ 17.

Plaintiffs originally brought this action in Minnesota state court as a putative class action against Impact Defendants, Gemstone Defendants, and two individuals involved with Impact Defendants: David Reynolds and Frank Rolfe. *See generally id.* As injunctive remedies, Plaintiffs sought, among other things, an order requiring Defendants to correct the sewage problems at SMH Park, perform any maintenance "needed to comply with health and safety laws," replace the Neptune meters with meters that accurately measure utility usage for each household, and invalidate the new, allegedly fraudulently procured leases. *Id.* at 76–77.

Defendants removed the action to federal court on November 20, 2024, ECF No. 1, and Impact Defendants, Reynolds, and Rolfe moved to dismiss the complaint on various grounds, ECF Nos. 7, 14. On May 2, 2025, the Court granted these motions in part, dismissing all claims against Reynolds and Rolfe and dismissing some claims against Impact Defendants. *See* ECF No. 49. Litigation proceeds against Impact Defendants, and this Order does not have any effect on the claims against Impact Defendants and the defenses Impact Defendants may raise.

After removing this case to federal court, Gemstone Defendants expressed a willingness to work with Plaintiffs to address the issues that they had raised in their complaint. ECF No. 105 ¶ 3. Since that time, Plaintiffs and Gemstone Defendants

negotiated at arm's length, exchanging informal discovery, including expert reports on SMH Park's sewage issues and data on utility usage and billing. *Id.* ¶¶ 3–6. Plaintiffs and Gemstone Defendants ultimately reached a settlement agreement, in which Sartell MHC agrees at its own expense to complete repairs to SMH Park's sewage system proposed by the parties' experts and to undertake semi-annual physical examinations of the sewage system and full camera scoping of the sewage system every four years. ECF No. 75-1 at 6. The settlement agreement also requires Sartell MHC to "promptly take steps to remediate" any sewage backups or leaks at SMH Park. *Id.* at 6–7. Sartell MHC also agrees to conduct soil testing of SMH Park for various contaminants and, "[d]epending on the results of the testing," Sartell MHC "will remediate any contamination and conduct further testing." *Id.* at 7–8.

As to the water billing issues, Sartell MHC has already provided refunds to SMH Park residents who overpaid for water usage based on Sartell MHC's water usage analysis. *Id.* at 7. The settlement agreement requires Sartell MHC to continue monitoring SMH Park's water usage to identify situations where a resident's water usage materially deviates above 2,000 gallons per month beyond the household's average usage over the prior six months. *Id.*

As to the lease disputes, Sartell MHC agrees to allow all SMH Park residents to continue under a month-to-month lease (without the allegedly illegal provisions) or execute a standard form lease agreement containing uniform terms and conditions for all SMH Park residents. *Id.* at 8.

Plaintiffs sought preliminary approval of a settlement on behalf of a putative settlement class of all "individuals who have resided at Sartell Mobile Home Park at any time between June 14, 2024, and the date of final settlement approval." ECF No. 86 at 2; *see* ECF No. 69; ECF No. 71 at 6. The Court granted preliminary class certification for the purposes of settlement and preliminary approval of the settlement. *See* ECF No. 86. In accordance with the Court's preliminary approval order, Plaintiffs' counsel at Mid-Minnesota Legal Aid ("MMLA") mailed written notice of the settlement to all known settlement class members by January 9, 2026. ECF No. 106 ¶ 7. MMLA also posted written notice of the settlement at the SMH Park office and on MMLA's website. *Id.* ¶¶ 5–6. To date, no settlement class members have objected. *Id.* ¶ 8. Additionally, counsel for Gemstone Defendants served notice under the Class Action Fairness Act ("CAFA") on all relevant authorities no later than November 20, 2025. ECF No. 83.

The Court held a final fairness hearing on April 30, 2026, at which Plaintiffs' counsel discussed why the settlement was fair, reasonable, and adequate and should be approved, and why Plaintiffs' motion for attorneys' fees, costs, expenses, and service awards should be granted. ECF No. 109.

## ANALYSIS

### I.    Certification of the Settlement Class

Class certification is governed by Rule 23 of the Federal Rules of Civil Procedure, and a district court may not certify a class until it "is satisfied, after a rigorous analysis," that Rule 23(a)'s certification prerequisites are met. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011) (citation omitted). To certify the proposed class, the Court

5

must conclude that the four prerequisites of Rule 23(a) and at least one of the provisions of Rule 23(b) are satisfied. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). These requirements remain mandatory in the settlement context. *See Kruger v. Lely N. Am., Inc.*, No. 20-cv-629 (KMM/DTS), 2023 WL 5665215, at *2 (D. Minn. Sep. 1, 2023).

Here, the proposed settlement class is defined as "[a]ll individuals who have resided at Sartell Mobile Home Park at any time between June 14, 2024, and the date of final settlement approval." ECF No. 102 at 5. A close review of the materials submitted in support of the unopposed motion, and other relevant materials in the case file, shows that this settlement class satisfies the prerequisites of Rule 23(a) and Rule 23(b)(2), making certification for the purposes of settlement appropriate.

### a.    Rule 23(a)

Rule 23(a) provides that a class action may be maintained if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

These four requirements—numerosity, commonality, typicality, and adequacy of representation—are met here.

### i.    Numerosity

There are several relevant factors pertaining to the numerosity inquiry, the most obvious being the size of the proposed class. *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559 (8th Cir. 1982). In this case, the number of proposed settlement class members exceeds 100. *See* ECF No. 102 at 15; ECF No. 1-2 ¶ 128. As a matter of size, this satisfies the

numerosity requirement. *See Portz v. St. Cloud State Univ.*, 297 F. Supp. 3d 929, 944 (D. Minn. 2018) (explaining that a putative class size of at least 40 members generally supports a finding of numerosity).

The Court may also consider "any other factor relevant to the practicability of joining all the putative class members." *Paxton*, 688 F.2d at 559–60. Here, because many residents of SMH Park are low-income, *see* ECF No. 1-2 ¶¶ 27, 30, it may be impracticable for individual settlement class members "to institute individual lawsuits." *Gries v. Standard Ready Mix Concrete, L.L.C.*, 252 F.R.D. 479, 486–87 (N.D. Iowa 2008) (collecting cases explaining that a court may consider "the financial resources of the potential class members" with respect to their ability to bring suit). Additionally, Plaintiffs have alleged that Defendants have retaliated against SMH Park residents in the past for raising concerns with the park's management. *See* ECF No. 1-2 ¶¶ 2, 6. Assuming the truth of these allegations, SMH Park residents may therefore be deterred from bringing individual actions against Gemstone Defendants—their current landlord—for fear of retaliation. *See Rattray v. Woodbury County*, 253 F.R.D. 444, 452 (N.D. Iowa 2008) (explaining that a court may consider "the class members' continued relationship to the defendant" and "any fear that such a continued relationship might discourage individual action"). In light of these considerations, the Court finds the numerosity element satisfied.

### ii.     Commonality

Commonality "requires a showing that class members have suffered the same injury." *Powers v. Credit Mgmt. Servs.*, 776 F.3d 567, 571 (8th Cir. 2015) (citation omitted) (internal quotation marks omitted). To satisfy commonality, the class members' "claims

must depend upon a common contention" that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. There is no requirement, however, "that every question of law or fact be common to every member of the class," and commonality may be satisfied, for example, "where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated." *Paxton*, 688 F.2d at 561 (citation omitted).

Here, there are "common contention[s]" among the putative settlement class that would be resolved "in one stroke," *Dukes*, 564 U.S. at 350: (1) that Gemstone Defendants negligently maintained SMH Park's sewage system in violation of state laws and regulations; (2) that Gemstone Defendants breached the implied covenant of habitability by failing to properly maintain SMH Park's sewage system; (3) that sewage discharges at SMH Park violate Minnesota environmental standards; (4) that Gemstone Defendants improperly bill for utilities; and (5) that the leases allegedly procured by fraud are invalid. *Dukes*, 564 U.S. at 350.

To be sure, not all residents of SMH Park have been impacted identically by Defendants' allegedly unlawful practices: for example, not all residents have experienced sewage backups, have been improperly billed for water usage, or signed the allegedly unlawful leases. *See, e.g.*, ECF No. 49 at 31–33, 46 (discussing the different factual circumstances of Plaintiffs). But class members need not be "identically situated" to gain class certification; rather, it is sufficient that a "question of law linking the class members

is substantially related to the resolution of the litigation." *Paxton*, 688 F.2d at 561 (citation omitted). Although the factual circumstances of the settlement class members may differ, common questions of law as to the legality of Gemstone Defendants' operation of SMH Park permeate all settlement class members' claims. And because the resolution reached here consists only of injunctive relief, the factual differences between settlement class members are largely irrelevant, since the implementation of that injunctive relief does not turn on determining individual injuries and damages. *See id.* That is sufficient to satisfy the commonality requirement.

### iii.    Typicality

The typicality requirement is "fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995). "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996).

As noted above, there are certainly factual variations in individual claims among settlement class members with respect to sewage issues, utility billing, and lease agreement disputes. But each settlement class members' claim arises from the same challenged course of conduct: Defendants' maintenance of SMH Park's sewage system, operation of the Neptune meters and utility billing, and alleged pressure on SMH Park residents to sign new leases. Likewise, the remedial theory is the same across all settlement class members: repair the sewage system, remediate the soil, bill SMH Park residents only for the water

9

that they use, and invalidate the allegedly illegal leases.  *See* ECF No. 1-2 at 6–8. Accordingly, a finding for Plaintiffs on their legal claims "would affect all class members equally," even if there are some factual variations among settlement class members with respect to their specific injuries.  *Harju v. Olson*, 709 F. Supp. 2d 699, 735 (D. Minn. 2010). Because all settlement class members would have claims similar to Plaintiffs', the typicality requirement is satisfied.  *See DeBoer*, 64 F.3d at 1174.

### iv.    Adequacy of Representation

To demonstrate adequacy of representation, a plaintiff must show that: "(1) the representative and [their] attorneys are able and willing to prosecute the action competently and vigorously; and (2) the representative's interests are sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge."  *City of Farmington Hills Emps. Ret. Sys. v. Wells Fargo Bank, N.A.*, 281 F.R.D. 347, 353 (D. Minn. 2012). "This inquiry requires the Court to evaluate the adequacy of both the proposed class representatives and the proposed class counsel."  *Taqueria El Primo LLC v. Ill. Farmers Ins. Co.*, 577 F. Supp. 3d 970, 993 (D. Minn. 2021).

As for the first requirement, Plaintiffs have been active participants in this case, preserving communications and documents between Defendants and themselves (which were instrumental to drafting the complaint), helping counsel formulate a settlement strategy, responding to discovery, and attending numerous appointments with counsel. ECF No. 92 ¶¶ 12–16.  Plaintiffs have continued to zealously litigate their remaining claims against Impact Defendants, and all indications to date suggest that Plaintiffs will continue to prosecute this action competently and vigorously.  *See, e.g.*, ECF Nos. 32, 33, 49, 100.

Additionally, Plaintiffs' counsel and their firms have a wealth of experience litigating class actions and representing tenants in housing disputes. ECF No. 105 ¶¶ 7–8; ECF No. 105-1 (describing experience of Robins Kaplan attorneys); ECF No. 105-2 (describing Robins Kaplan's experience in litigating consumer class actions); ECF No. 106 ¶ 4 (describing experience of MMLA attorneys in housing law); ECF No. 106-1 (describing MMLA's class and impact litigation successes). Plaintiffs' counsel have ably litigated this case to date, having successfully opposed a great deal of Impact Defendants' motion to dismiss. *See* ECF No. 49. The Court is persuaded that Plaintiffs and their counsel will competently and vigorously litigate this matter.

As for the second requirement, there is no evidence in the record suggesting Plaintiffs' interests diverge from those of other settlement class members. All settlement class members stand to benefit equally from the injunctive relief offered by the proposed settlement, and they share "common goal[s]" of a functioning sewage system at SMH Park, accurate utility billing, and fair lease agreements. *Farmington Hills Emps. Ret. Sys.*, 281 F.R.D. at 354. And because the proposed settlement largely gives Plaintiffs the injunctive remedies they requested in their complaint, it is difficult to see how other settlement class members would complain that the result achieved by Plaintiffs in this litigation is inadequate.

In sum, the Court finds the requirements of Rule 23(a) satisfied.

### b.      Rule 23(b)(2)

In addition to satisfying the requirements of Rule 23(a), Plaintiffs must also demonstrate that at least one of the provisions of Rule 23(b) is satisfied. *See Behrend*,

569 U.S. at 33.  Plaintiffs assert that their case satisfies Rule 23(b)(2).  ECF No. 102 at 14–16.  The Court agrees.

Rule 23(b)(2) provides that a class action may be maintained when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Class certification under Rule 23(b)(2) "is proper only when the primary relief sought is declaratory or injunctive." *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1121 (8th Cir. 2005).  Although Rule 23(b)(2) does not require a showing that common questions of law and fact predominate over individual ones—as Rule 23(b)(3) requires—Rule 23(b)(2) claims must still be "cohesive" because "there is no provision for unnamed class members to opt out of the litigation." *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1035 (8th Cir. 2010) (citation omitted).

As an initial matter, the only relief sought in the proposed settlement is injunctive: Sartell MHC agrees to repair, maintain, and regularly inspect SMH Park's sewage system, to conduct soil testing of SMH Park for various contaminants and remediate if necessary, to monitor SMH Park's water usage to identify irregular meter readings, and to effectively rescind the challenged lease agreements by allowing all SMH Park residents to continue under a month-to-month lease or execute a standard form lease agreement containing uniform terms and conditions.  ECF No. 75-1 at 6–8.

The claims asserted are also cohesive.  That cohesiveness inquiry considers whether "a single injunction or declaratory judgment would provide relief to each member of the class." *Dukes*, 564 U.S. at 360.  Such is the case here: the settlement agreement provides

12

relief to all SMH Park residents in a manner that enjoins Gemstone Defendants' conduct "as to all of the class members or as to none of them." *Id.* (citation omitted). Settlement class members claim that the sewage problems at SMH Park have caused widespread health and safety risks across SMH Park, either through sewage entering residents' homes, their rented lots, or community spaces at the park. *See* ECF No. 1-2 ¶ 191. The settlement agreement will remedy those problems for all settlement class members, assuming that the repairs and maintenance are successfully completed. ECF No. 75-1 at 6–8. Similarly, Plaintiffs allege that defective water and sewer meters were installed at each resident's home in SMH Park, and they describe the water overbilling issue as a park-wide issue. *See* ECF No. 1-2 ¶¶ 81, 86, 94, 96. To that end, the settlement agreement requires Sartell MHC to monitor irregular water billing, which addresses any ongoing claims by settlement class members about improper charges. ECF No. 75-1 at 7. Finally, the settlement agreement resolves any lingering dispute about the validity of the challenged lease agreements by effectively setting those agreements aside for all SMH Park residents and allowing all residents to choose either a month-to-month lease or a standard form lease agreement. *Id.* at 8. Because the settlement agreement provides "relief to each member of the [settlement] class" as to their claims for injunctive relief, the Court grants class certification for the purposes of settlement under Rule 23(b)(2). *Dukes*, 564 U.S. at 360.

## II.    Appointment of Class Counsel

Having concluded that class certification is appropriate, the Court must now appoint class counsel. *See* Fed. R. Civ. P. 23(g). The Court must consider several factors in appointing class counsel, including "the work counsel has done in identifying or

investigating potential claims in the action," "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action," "counsel's knowledge of the applicable law," and "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

As described above, proposed class counsel and their law firms have deep experience with litigating class actions and housing-law disputes. ECF No. 105 ¶¶ 7–8; ECF No. 105-1; ECF No. 105-2; ECF No. 106 ¶ 4; ECF No. 106-1. And proposed class counsel have already expended resources on this case by investigating multiple claims at issue, initiating this action, successfully opposing most of Impact Defendants' motion to dismiss, engaging in informal discovery with Gemstone Defendants, and reaching a resolution with Gemstone Defendants. The Court therefore appoints Robins Kaplan and MMLA as class counsel for the purpose of settlement with Gemstone Defendants.

## III.    Final Approval of the Settlement

As a preliminary matter, the Court finds that the notice program carried out by Plaintiffs satisfies the requirements of Rule 23, the Due Process Clause, and CAFA. Therefore, the only question left is whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In assessing whether the proposed settlement is "fair, reasonable, and adequate," the Court considers the *Van Horn* factors: (1) the merits of Plaintiffs' case weighed against the terms of the settlement; (2) Gemstone Defendants' financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement. *In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013) (citing *Van Horn v. Trickey*, 840 F.2d 604, 607

14

(8th Cir. 1988)).  It is also appropriate for the Court to consider the factors enumerated in Rule 23(e)(2) along with the *Van Horn* factors.  *See Swinton v. SquareTrade, Inc.*, 454 F. Supp. 3d 848, 860–61 (S.D. Iowa 2020); *Barclay v. iFIT Health & Fitness, Inc.*, No. 19-cv-2970 (ECT/DJF), 2025 WL 3004039, at *9 (D. Minn. Oct. 27, 2025).  Under Rule 23(e)(2), courts consider whether: (1) "the class representatives and class counsel have adequately represented the class"; (2) "the proposal was negotiated at arm's length"; (3) "the relief provided for the class is adequate"; and (4) "the proposal treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2).  A settlement agreement is "presumptively valid."  *Uponor*, 716 F.3d at 1063 (citation omitted).

### a.    *Van Horn* Factors

#### i.    Merits of Plaintiffs' Case vs. the Terms of the Settlement

This factor, which is the "most important," *Van Horn*, 840 F.2d at 607, requires consideration of "Plaintiffs' likelihood of success in litigation" and "the range of successful outcomes," *Barclay*, 2025 WL 3004039, at *9.

This case is unusual because, in terms of injunctive relief, the settlement gives Plaintiffs nearly everything they asked for in their complaint.  Plaintiffs sought an order compelling Defendants to correct the sewage problems at SMH Park and perform any maintenance "needed to comply with health and safety laws."  ECF No. 1-2 at 76.  This they will receive: the settlement agreement requires Sartell MHC to repair SMH Park's sewage system as recommended by the parties' experts, regularly inspect and maintain the park's sewage system, and remediate any soil contamination at SMH Park resulting from past sewage leaks.  ECF No. 75-1 at 6–8.  Plaintiffs also requested that Defendants replace

15

the Neptune meters with meters that accurately measure utility usage for each household. ECF No. 1-2 at 76.  Although Gemstone Defendants have not agreed to remove the Neptune meters, they have agreed to monitor for instances when a resident's water usage materially deviates above 2,000 gallons per month beyond the household's average usage over the prior six months.  ECF No. 75-1 at 7.  As the parties explained at the final approval hearing, this arrangement will ensure continued monitoring by Gemstone Defendants and will guard against future exorbitant, inaccurate utility charges like the ones described in the complaint. Finally, Plaintiffs sought to invalidate the allegedly fraudulently procured leases entered into by SMH Park residents in December 2023.  *Id.* at 77.  Plaintiffs will effectively receive this, for they have the option to replace their current lease with a month-to-month lease or a standard form lease containing uniform terms and conditions.  ECF No. 75-1 at 8.  Finally, Plaintiffs maintain an avenue to recover monetary damages, as the settlement does not impact Plaintiffs' ongoing litigation with Impact Defendants.  Within "the range of successful outcomes," *Barclay*, 2025 WL 3004039, at *9, the settlement is an excellent result for Plaintiffs.

That excellent result becomes more impressive considering that the case against Gemstone Defendants is far from a slam dunk.  As the Court's order on Impact Defendants' motion to dismiss indicates, many complex, contested issues in this case remain, including whether Gemstone Defendants' operation of SMH Park runs afoul of state environmental standards and whether Gemstone Defendants have exhibited negligence in violating Minnesota regulations on manufactured home parks.  *See e,g.*, ECF No. 49 at 26–28, 34. The outcome of Plaintiffs myriad claims "is uncertain."  *Khoday v. Symantec Corp.*,

No. 11-cv-180 (JRT/TNL), 2016 WL 1637039, at *5 (D. Minn. Apr. 5, 2016) (finding this factor weighed in favor of settlement when the merits of the case were "uncertain" given that "several issues [remained] contested").

Perhaps the most significant hurdle that Plaintiffs faced in their case against Gemstone Defendants was proving thorny issues of fault; after all, the misconduct that Plaintiffs allege in the complaint arose during Impact Defendants' ownership of SMH Park, not Gemstone Defendants' ownership. *See, e.g.*, ECF No. 1-2 ¶¶ 56, 58, 61, 64–69, 79, 83, 86, 106, 111. Plaintiffs faced a very real risk, then, that Gemstone Defendants would seek to avoid liability by pointing the proverbial finger at Impact Defendants. *See* ECF No. 61 at 30–31 (Impact Defendants' answer, raising the fault of others as an affirmative defense). How a jury would ultimately weigh Gemstone Defendants' culpability, and whether Plaintiffs would be entitled to the injunctive relief that they seek, are outcomes that are "far from certain." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 933 (8th Cir. 2005). Rather than litigate those tricky questions of comparative fault, Plaintiffs and Gemstone Defendants have agreed to a settlement that "confers substantial and immediate benefits on the class" who, as Plaintiffs allege, are presently living through ongoing environmental and safety hazards. *Keil v. Lopez*, 862 F.3d 685, 696 (8th Cir. 2017). This factor therefore weighs in favor of approving the parties' settlement.

### ii.    Defendants' Financial Condition

No party disputes Gemstone Defendants' ability to carry out its settlement obligations. This factor is therefore neutral in the Court's analysis. *See Swinton*, 454 F. Supp. 3d at 878–79 (finding this factor neutral when "[n]o one disputes whether Defendant

17

is financially capable of either meeting its obligations under the Settlement or continuing this litigation").

### iii.    Complexity and Expense of Further Litigation

The complexity and expense of further litigation could be great. "Class actions, in general, place an enormous burden of costs and expense upon parties." *Marshall v. Nat'l Football League*, 787 F.3d 502, 512 (8th Cir. 2015) (citation modified). That is particularly true in this case, which alleges multiple common-law and statutory claims across an array of legal specialties—environmental law, housing law, and tort law, to name a few. *See* ECF No. 49 ¶¶ 165–88; *cf. Marshall*, 787 F.3d at 512 (explaining that the burden is "obvious" in a case that involves "the application of numerous . . . laws"). The environmental law issues, in particular, would have no doubt required the assistance of experts to evaluate technical issues of soil and water pollution; indeed, the parties have already engaged in informal expert discovery. *See* ECF No. 105 ¶¶ 4–6. On that issue alone, the case would have become a "battle of the experts where it would not be clear how a jury would resolve such issues." *PHT Holding II LLC v. N. Am. Co. for Life & Health Ins.*, No. 4:18-cv-00368-SMR-HCA, 2023 WL 8522980, at *4 (S.D. Iowa Nov. 30, 2023) (citation omitted) (internal quotation marks omitted). And, at long last, "a judgment favorable to Plaintiffs may be the subject of post-trial motions and appeals" which "would substantially prolong the case, and delay the ultimate [relief] to members of the [c]lass, in the event Plaintiffs were to prevail."

18

*In re Netgain Tech., LLC*, No. 21-cv-1210 (SRN/LIB), 2025 WL 3063288, at *7 (D. Minn. Nov. 3, 2025).

On the other hand, the proposed settlement provides assured, "immediate benefit" to residents of SMH Park and avoids the risks, delay, and costs associated with continued litigation. *In re Wireless*, 396 F.3d at 933. According to Plaintiffs, residents of SMH Park are currently facing urgent environmental and safety hazards, which makes further delay in this case particularly undesirable for settlement class members. Accordingly, this factor weighs in favor of approving the parties' settlement.

### iv.       Objections to the Settlement

In accordance with the Court's preliminary approval order, Plaintiffs' counsel mailed written notice of the settlement to all known settlement class members by January 9, 2026. ECF No. 106 ¶ 7. MMLA also posted written notice of the settlement at the SMH Park office and on MMLA's website. *Id.* ¶¶ 5–6. To date, no settlement class members have objected to the settlement. *Id.* ¶ 8. The lack of objections to the proposed settlement supports approval. *See Zilhaver v. UnitedHealth Grp., Inc.*, 646 F. Supp. 2d 1075, 1080, 1083 (D. Minn. 2009) (finding this factor "strongly support[ed] settlement approval" when no objections were made by class members).

### b.       Rule 23(e)(2) Factors

Having found that the *Van Horn* factors weigh in favor of approving the parties' settlement, the Court also finds that the Rule 23(e)(2) factors support the parties' settlement. As discussed elsewhere in this Order, the class representatives and class counsel adequately represented the class. Fed. R. Civ. P. 23(e)(2)(A). The parties also

reached the settlement agreement after several months of arm's-length negotiation between the parties' counsel and the exchange of informal discovery, avoiding any risk of collusion and ensuring that the parties entered into a settlement with eyes wide open. ECF No. 105 ¶¶ 3–6; *see* Fed. R. Civ. P. 23(e)(2)(B); *see also King v. Raineri Constr., LLC*, No. 4:14-cv-1828 CEJ, 2015 WL 631253, at *3 (E.D. Mo. Feb. 12, 2015) (finding this factor weighed in favor of settlement approval when the parties were represented by counsel who engaged in negotiations and exchanged informal discovery for a month prior to submitting their proposed agreement). And, as Plaintiffs represented at the final approval hearing, their request for attorneys' fees, costs, and service awards was negotiated after material terms of the settlement were already solidified, and the approval of the settlement is not contingent on approval of Plaintiffs' request for fees, costs, and service awards. Moreover, as discussed above, settlement avoids the risks, additional costs, uncertainties, and delays of continued litigation. *See* Fed. R. Civ. P. 23(e)(2)(C)(i). The proposed method of distributing relief to the settlement class is straightforward and, with the exception of opting into a new lease agreement, does not require settlement class members to take any affirmative action. *See* ECF No. 75-1 at 6–8; *see also* Fed. R. Civ. P. 23(e)(2)(C)(ii). And the proposed settlement lifts all boats: the sewage system repairs, utility monitoring, and effective rescission of the challenged leases will benefit all settlement class members and remedy their respective injuries from Gemstone Defendants' allegedly unlawful conduct at SMH Park. *See* ECF No. 75-1 at 6–8; *see also* Fed. R. Civ. P. 23(e)(2)(D). Accordingly, with both the *Van Horn* and Rule 23(e)(2) factors weighing

in favor of approving the parties' settlement, the Court finds the settlement fair, reasonable, and adequate and grants it final approval.

## IV.    Request for Attorneys' Fees

"The starting point in determining attorney fees is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates." *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002).    The party seeking attorneys' fees bears the burden of proving the reasonableness of the hours and the rates claimed.  *Hensley v. Eckerhart*, 461 U.S. 424, 433–34 (1983).    When attorneys' fees and costs are provided for in a settlement agreement, that agreement is entitled to a "certain level of deference," and the Court need not undertake a "line-by-line, hour-by-hour review" of the fees.  *Melgar v. OK Foods*, 902 F.3d 775, 779 (8th Cir. 2018).

Here, attorneys from two law firms—Robins Kaplan and MMLA—expended time in connection with settlement-related work involving the Gemstone Defendants.  Attorneys at Robins Kaplan spent 134.8 hours on settlement-related work with the Gemstone Defendants, ECF No. 91 ¶ 8, while attorneys at MMLA spent 69.97 hours on settlement-related work with the Gemstone Defendants, ECF No. 92 ¶ 4.  The Court concludes that the combined 204.8 hours spent by Plaintiffs on investigating their claims against the Gemstone Defendants (including through expert reports), negotiating a settlement, and finalizing an agreement is reasonable.  *See* ECF No. 91 ¶ 14; ECF No. 92 ¶ 8 (describing the efforts of Plaintiffs' attorneys to bring claims against the Gemstone Defendants to a settlement).

As for the attorneys' hourly rates, the Robins Kaplan attorneys charge an hourly rate between $450 (for associates) and $925 (for partners).  ECF No. 91 ¶ 9.  The MMLA attorneys charge an hourly rate between $295 and $450.  ECF No. 92 ¶ 5.  The Court finds these rates reasonable for class action litigation in this District.  *See Barclay*, 2025 WL 3004039, at *14 (finding hourly rates of between $450 and $1,050 per hour in a consumer class action case were reasonable).

Multiplying the attorneys' hourly rates by their hours worked results in a lodestar amount of $112,591.70.  ECF No. 91 ¶ 11; ECF No. 92 ¶ 7.  However, Plaintiffs only seek the negotiated amount of $15,000 in fees.  ECF No. 90 at 8.  That represents an 86.7% reduction in fees, which is eminently reasonable.  *See White v. Northstar Media, Inc.*, No. 21-cv-2770 (KMM/LIB), 2022 WL 3122925, at *3 (D. Minn. July 25, 2022) (approving settlement fees that were 64.1% lower than the lodestar calculation); *Seow v. Miyabi Inc.*, No. 19-cv-2692 (JNE/DTS), 2021 WL 3616894, at *2 (D. Minn. July 15, 2021) (approving settlement fees that were 62% lower than the lodestar calculation); *see also Barclay*, 2025 WL 3004039, at *14 (explaining that a requesting attorneys' fees that are less than the lodestar calculation "strongly suggests the reasonableness of the requested fee").  The Court therefore grants Plaintiffs $15,000 in attorneys' fees.[1]

---

[1]    Because an award of attorneys' fees reaches the negotiated maximum fees and costs amount of $15,000, the Court need not decide whether Plaintiffs are entitled to their costs and expenses.

22

## V.    Service Awards

Plaintiffs finally each request a $5,000 service award.  ECF No. 90 at 17.  "Courts often grant service awards to named plaintiffs in class action suits to promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits."  *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 867 (8th Cir. 2017) (citation omitted) (internal quotation marks omitted).  In determining whether to grant a service award, courts consider the actions that the plaintiffs took to protect the class's interests, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiffs expended in pursuing litigation.  *See In re U.S. Bancorp*, 291 F.3d at 1038.

Here, each of these factors weighs in favor of granting service awards.  Plaintiffs have been involved in this litigation since its outset, and they assisted the progression of this case by preserving communications and documents between Defendants and themselves (which were instrumental to drafting the complaint), helping counsel formulate a settlement strategy, responding to discovery, and attending numerous appointments with counsel.  ECF No. 92 ¶¶ 12–16.  These efforts are similar to those in cases where courts have deemed service awards appropriate.  *See Caligiuri*, 855 F.3d at 867 (affirming service awards when plaintiffs "participated in interviews, assisted with discovery, were deposed, participated in conferences, and met with attorneys throughout the litigation process"); *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 1003 (D. Minn. 2005) (awarding service awards when plaintiffs "reviewed pleadings, conferred with counsel, provided information [to counsel], responded to discovery, and reviewed and consented to the settlement").  These efforts have imposed social hardships on Plaintiffs;

they report that several SMH Park residents are now fearful of associating with them for fear of retaliation by Defendants.  ECF No. 92 ¶ 16.  Nevertheless, because of Plaintiffs' diligence and effort, all residents of SMH Park will benefit from soil monitoring and remediation, sewage system repairs and maintenance, and fair utility billing and lease agreements.  In recognition of their efforts which will benefit many, the Court grants service awards of $5,000 to Marcie Knox, Cheryl Skaj, Janet Eich, and Bradley Bandas.

## CONCLUSION

Based on the foregoing, and on all the files, records, and proceedings in this matter,

**IT IS HEREBY ORDERED** that:

1.  Plaintiffs' Motion for Final Approval of Class Action Settlement (ECF No. 101) is **GRANTED**.

2.  The following class is hereby certified for settlement purposes only under Fed. R. Civ. P. 23: All individuals who have resided at Sartell Mobile Home Park at any time between June 14, 2024, and May 27, 2026.

3.  Plaintiffs' counsel Robins Kaplan and Mid-Minnesota Legal Aid are **APPOINTED** as settlement class counsel.

4.  Final approval of the methods and forms of notice provided to settlement class members and pursuant to CAFA is **GRANTED**.

5.  The parties are directed to take the necessary steps to effectuate the terms of the settlement agreement (ECF No. 75-1).

6.  Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards (ECF No. 89) is **GRANTED** as follows:

    a.  Plaintiffs' request for an award of $15,000.00 in attorneys' fees is approved.

    b.  Service awards of $5,000.00 each are granted to named Plaintiffs Marcie Knox, Cheryl Skaj, Janet Eich, and Bradley Bandas.

7.    All of Plaintiffs' claims against Gemstone Communities, LLC and Sartell MHC, LLC are **DISMISSED WITH PREJUDICE**.

Dated: May 27, 2026                    *s/Laura M. Provinzino*
                                        Laura M. Provinzino
                                        United States District Judge